[Civ. No. 3303.  Third Appellate District.—October 31, 1927.]

H.  J.  MOELLER, Appellant,  v.  C.  E.  PACKARD, Respondent.

Grant & Bailey for Appellant.

Charles W. Thomas and J. G. Bruton for Respondent.

HART, J.—Upon a record prepared in accord with the provisions of section 953a of the Code of Civil Procedure, and after a motion for a new trial was made by him and denied by the court, the plaintiff prosecutes an appeal from the judgment rendered and entered against him in an action in which he claims damages for injuries alleged to have been negligently inflicted by defendant upon the person of his (the plaintiffs') infant daughter and for her death resulting therefrom, the cause having been tried by the court, sitting without a jury.

The complaint, after describing the manner in which the injuries were caused and charging that they were the direct result of the negligence or culpable carelessness of the defendant, declares that as the result of such negligence the plaintiff suffered damage as measured in money in the aggregate sum of $3,121.85, said sum including expenditures by plaintiff in payment of the bills of doctors, nurses, sanitarium at which the minor was treated for her injuries up to the time of her death, funeral expenses, and also for loss to plaintiff of the services of the infant.

The answer consists of general denials of the allegations of the complaint, contributory negligence on the part of the deceased not being specially pleaded, yet evidence addressed to that plea was introduced and received without objection. This sufficiently put in issue the defense of contributory negligence. (*Coffman* v. *Singh*, 49 Cal. App. 342 [193 Pac. 259]; *Hoffman* v. *Southern Pacific Co.*, 84 Cal. App. 337 [258 Pac. 397].)

There is but one point upon which the plaintiff relies for a reversal, and that is that the evidence does not give sufficient support to the finding that the proximate cause of the injuries received by the child was the negligence of the latter.

At the time of the accident, the deceased with three other children (Leonard Clark, Johnny and Frances Melgar, the two last named being brother and sister) were walking together in a northerly direction on a public highway in Yolo County, later to be described. The child who was injured in the accident was named Maybelle Moeller, and, as above stated, was the daughter of the plaintiff. At the time of the accident she was eight and a half years of age.

It is expressly conceded by the defendant's counsel that there is no conflict whatever in the evidence. The testimony from which principally the court educed its findings was that of the defendant himself. Finding number one quite fully sets forth the facts to which defendant testified, he having been called to the witness-stand by the plaintiff under section 2055 of the Code of Civil Procedure. We quote said finding as setting forth a general statement of the circumstances under which the accident occurred:

"That on the 17th day of October, 1923, defendant was in the possession of and was driving one Dodge Automobile northerly on the County highway between Woodland and Knights Landing; and that at a point between the intersection of McGriff's land on the east side of said highway and the road going westerly on the south side of the Charles Laugenour place and on the east side of the paved portion of said highway in the County of Yolo, State of California, and that at said time and place Maybelle Moeller, a daughter of the plaintiff of the age of eight and one-half years, was walking northerly on said highway and off of, and to the east of the paved portion thereof; that defendant was driving at a speed of about twenty-five miles per hour when he observed several children on the highway at a distance of about four hundred feet ahead of him and that when he observed said children, he removed his foot from the throttle of the automobile and gradually slackened his speed until he was driving at the rate of about fifteen miles an hour; that another automobile was approaching from the opposite direction and the children got off of the paved portion of the highway, upon which defendant was driving, onto the unpaved portion of the highway at defendant's right and to a position of safety; that defendant did not sound his horn, but on observing that the children had gotten off of the paved highway and to a position of safety, he gradually increased his speed until he was again driving at the rate of about twenty-five miles per hour; that when he had reached a point within about thirty or forty feet of where the children were at the side of the road, plaintiff's daughter suddenly ran out onto the paved portion of the highway to recover some article that had blown from her hand; that upon observing her, defendant immediately pulled his auto-

mobile to the left to avoid striking her but that he did not succeed in entirely missing her and that some portion of the rear part of the automobile struck her; that said automobile continued to the left and overturned on the left-hand side of said highway; that by reason of some part of said automobile striking said daughter of said plaintiff, she thereby sustained injuries from which she thereafter died.''

In said finding the court also found that ''said injuries were caused solely and entirely by the negligence of said Maybelle Moeller in suddenly and negligently, and without warning, running from a place of safety off of the paved portion of said highway and to the right thereof to a place of danger on the paved portion of said highway and in front of defendant's approaching automobile, and that said injuries were not caused by any negligence on the part of defendant whatsoever.''

In addition to the testimony of Packard, as set forth in the foregoing finding, he further stated that when he was about thirty feet from the children they were about five feet off the road or pavement; that it was at that time that he observed something ''blow across the road'' and immediately thereupon he saw Maybelle ''run out'' upon the road. Packard said that the reason he did not sound his horn was because the children, when he was about one hundred feet from them, were entirely off the road and that there was then nothing in front of him to call for a warning of his approach. He further testified that, so far as he could observe, the children were facing north when he was at a point on the road about one hundred feet from them, but when he reached a point about thirty feet from where the children were he noticed ''a little boy looking at me.'' Further testifying, he said: That the reason he did not ''blow his horn'' immediately upon the child running on to the road was because he had no time to do so; that he was then directing his attention and energies to the guiding of his car off the pavement so as to avoid striking the child; that, after the car upset, he ''climbed out,'' ran to where the child was lying on the highway, which was about ''five feet from the right-hand edge of the pavement going north'' and took her into his arms and so held her until a Mr. Sheridan came along, when he (Packard) requested Sheridan to convey

her to the sanitarium in Woodland; that Sheridan consented and that he (Packard) held the child in his arms until they reached the hospital.

Leonard Clark, an eleven year old boy, and referred to above, and called as a witness by the defendant, stated that Packard, driving his car, was, when he (Leonard) first observed him on the highway, between a third and a half a mile from where he and his companions were walking on the highway; that within a brief time thereafter a car coming from the opposite direction from that in which Packard was traveling was approaching and that thereupon he and his companions left the paved portion of the highway to permit the passing of said car with safety to themselves; that all four of the children, including the deceased, looked back, and that he saw Packard within a short distance from them; that before Packard reached the point at which they were walking, Johnny Melgar grabbed his sister by the arm, although she was still off the highway proper, and pulled her further away from the paved portion thereof and ''in the ditch''; that when the car was within a very few feet from where they were a paper was blown from the hand of deceased on to the highway, and that the latter immediately started after it by stepping on the highway in the way of Packard's car; that simultaneously with that movement by deceased Johnny Melgar ''hollered, 'Look out, Maybelle.' '' ''Q. What did Maybelle do? A. She just ran out and stooped over and the hind end of the car of Mr. Packard hit her.'' Testifying further, Leonard said that the car ''tipped over,'' that Packard then got out of the car and rushed to where the child was lying on the pavement and took her into his arms. He also testified that when the impact happened the deceased was about in the center of the paved portion of the highway, and that it was then that she stooped to pick up the paper which had blown from her hands. He further said that he ''walked backwards'' a part of the time, which would mean that thus he was enabled to see motor vehicles traveling in the direction in which he and his companions and Packard's car were going. It is only fair to state that this witness, responding categorically to questions by one of the attorneys for the defense, stated that he and his companions left the paved portion of the highway on observing a car traveling toward them, and at

that time he (witness) did not know that "Mr. Packard was right close there."

The Mr. Sheridan, above mentioned, testifying for defendant, stated: "When we went back there (referring to the fact of his return to the scene of the accident after he conveyed the child to the sanitarium), I stopped and examined those tracks there very carefully, and the machine, to my estimation now, was probably two and a half or three feet from the edge of the highway—from the right-hand side. . . . The car swerved right straight across the road, almost as straight as you could turn a car, into the ditch and turned over on its side. It was a Dodge car with the body made of light material and the body probably was four feet high and the length of the Dodge truck."

Mrs. Moeller, mother of the deceased minor, testified that the latter, at the time of the accident, was eight and a half years of age; that the child was at that time in her third term of school; that "she was very bright in school. She was above the average of girls at her age, but she was quiet, and didn't talk very much but she thought deeply"; that she was perfectly capable of taking care of herself in passing along the highway, as "she had been going back and forth all the time." Mrs. Moeller further testified that the child had always been healthy; that the child was sufficiently developed to be able to assist her (the mother) in disposing of work in the kitchen at their home and in sweeping and dusting about the house, and that she (the child) did so assist the mother.

The plaintiff, father of the child, testified, as did his wife, relative to the ability of the girl to take care of herself in traveling as a pedestrian over the highway on which the accident happened, and also as to the capability of the deceased of assisting her mother in some of the latter's household duties and that the child, at and for some time prior to the accident, did render such assistance.

The above statement, in substance, encompasses all the essentially vital testimony in the case, and upon that testimony we are asked to declare and hold, as a matter of law, that the findings and the judgment thereupon entered and appealed from are not fortified by sufficient evidentiary support. We have with solicitous care examined the evidence as it has been presented here and considered the point

suggested, but have not thus been persuaded to the conclusion that this court, with legal justification, can hold that the decision does not rest upon a sound evidentiary foundation. To the contrary, it has been found to be one of those cases with which the reviewing courts have ofttimes been confronted and as to which they have been compelled to hold that the evidence, upon its face, was sufficient to support a verdict or findings either for or against the party complained of. The case of *Hoy* v. *Tornich,* 199 Cal. 545 [250 Pac. 565], in which Presiding Justice Finch of this court, acting as justice *pro tem.* of the supreme court, prepared the opinion is, in many particulars a parallel case to this, and therein, while not expressly so declaring, the necessary implication from the analysis and the nature of the discussion of the evidence by the author of the opinion is that, had the verdict been for the defendant (the plaintiff having prevailed at the trial) the court would, upon the evidence as it was presented in the transcript, have been required to sustain the result thus arrived at below. There is, however, a significant distinction between that case and this in certain particulars, to wit: There the injured minor was but six years of age, and started to *walk* across the paved portion of the highway at a time when the defendant's view of the pavement in front of him was obstructed for a distance of over one hundred feet from the point where the disaster occurred, while in the present case the minor was eight and a half years of age and dashed suddenly from the unpaved portion of the road on to the pavement when defendant's car was only thirty or forty feet from her, thus creating an emergent situation which called for quick or sudden action on the part of the defendant to avert a collision with the child, if, under the circumstances, a collision could have been avoided. The rule applicable to circumstances such as are existent in the instant case is well stated in *Depons* v. *Ariss,* 182 Cal. 485 [188 Pac. 797]. There the deceased stepped in front and in the path of the defendants' truck while the machine, operated by an employee of defendants, was traveling at a low rate of speed on a street in the city of Oakland. The general circumstances of that case it is not necessary to recite herein. It is sufficient to say that there was evidence strongly tending to show that the deceased took the perilous step without exercising the

moderate care which would have at once suggested the dangerous consequences of such an act. After stating the facts in detail the court, on page 487 of the report, said: ''Under the facts stated we are asked to reverse the judgment. This we cannot do. It was shown that deceased left a position of safety and put himself directly in the path of the approaching truck. This evidence was sufficient to support the conclusion of the trial court. Under these circumstances no duty was imposed upon the driver of the truck to assume that deceased would suddenly expose himself to imminent peril. On the contrary, he had a right to conclude that he would not recklessly move directly in front of the approaching machine. (*Green* v. *Los Angeles Terminal Ry. Co.*, 143 Cal. 31, 44 [101 Am. St. Rep. 68, 76 Pac. 719]; *Basham* v. *Southern Pacific Co.*, 176 Cal. 320 [168 Pac. 359].)''

It is true that in the case from which the foregoing excerpt is taken the party who was injured and who passed out from the effects of the injuries received was an adult, but it cannot justly be set down as a matter of law or an abstract proposition that the rule therein invoked and applied is any the less applicable to the case of a minor past the age of eight years injured under like circumstances. In this case both the mother and the father of the child testified, as seen, that she was physically robust and of unusual intelligence, always maintaining a standard of excellence in her studies in school. Moreover, it appears from the testimony of the parents that she had been for some period of time accustomed to walking to and from school over the highway upon which she received the fatal injuries. Her father, who naturally knew her ability and capabilities, stated that he had always regarded her as being able to take care of and protect herself against the menacing perils of the automotive traffic over and along the highway on which she was injured when walking to and likewise returning from school along said highway. It would seem unreasonable to conceive that a child of her age, intelligence, and her experience as a pedestrian over a public highway, acquired while she was daily walking to school and likewise returning to her home, would not, as well as an adult, know of the heavy motor traffic on the highways of the state and of the risks and hazards to which pedestrians as well as motor or other vehicles traveling over such highways are constantly exposed,

or that she did not, when using the highway over which she unfortunately received the injuries which resulted in her death, anticipate the passing of automobiles at any time from any direction of said highway, and that it did not behoove her, when using the highway as a pedestrian, to exercise ordinary or that amount of care necessary for her own safety or protection against being struck by a passing automobile. Thus have we ventured our own views regarding the evidence and its apparent effect upon the question of the intelligence and mental capacity of the child in the relation of that question to the issue of contributory negligence arising from the intrinsic character of the testimony introduced to prove the negligence of the defendant, for the purpose of emphasizing the proposition suggested at the outset of this opinion, that whether or not the child at the time of the accident was possessed of such a degree of intelligence and mental capacity as to know, understand, and appreciate the fact that pedestrians passing over and along public highways, while so using such thoroughfares, are always exposed to the risk of serious or fatal physical injury, and are, therefore, required, in such circumstances, to use reasonable and proper care for their own safety, was a question which, under the state of the evidence in this case, it was peculiarly within the province of the trial court, as the trier of the questions of fact, to determine. Of course there may arise, and doubtless have arisen, cases where it may be held as a matter of law that to a child contributory negligence may not, in cases of personal injury, be imputed. "An infant," said Judge Finlayson, in *Todd* v. *Orcutt,* 42 Cal. App. 687, 690 [183 Pac. 963], "may be so very young that, like an idiot or a lunatic, no negligence may legally be imputed to him. But not all infants are in that class. 'It is,' says Mr. Beach, 'a question of capacity and it has been found a very difficult question, and has been, in many cases, a very fruitful source of controversy as to what age is sufficient to constitute an infant *sui juris*. Unless the child is exceedingly young it is usually left to the jury to determine the measure of care required of the particular child in the actual circumstances of the case. Where there is no doubt as to the capacity of the child, at one extreme or the other, to avoid damage, the court will decide it as a matter of law.' (Beach on Contributory Negligence, sec. 117.) It has been held that a

child seven or eight years of age is capable of taking ordinary care of himself, and may be guilty of negligence. (*Gillespie* v. *McGowan*, 100 Pa. St. 144 [45 Am. Rep. 365]; *Messenger* v. *Dennie*, 137 Mass. 197 [50 Am. Rep. 295].) The rule is that the defense of contributory negligence may be invoked in actions by or on behalf of children who are of an age sufficient to exercise discretion for the avoidance of injury to themselves. The law does not fix this age of discretion. It may depend upon the character of the injury, the circumstances under which it occurred, and the size, intelligence, and capacity of the child.''

Taking up now the charge that the defendant himself was guilty of negligence in operating his car and that such negligence was the proximate cause of the accident, it is to be conceded, as counsel for plaintiff declare, that the children had the right to use the highway and that the mortally injured child had ''the right to return to the highway after she had gotten off.'' ■ This, however, is a mere abstract statement of a sound rule, and is manifestly subject to the qualification that when a pedestrian of an age and mental capacity to exercise intelligent discretion, for any reason, leaves a highway over which he has been traveling and then returns thereto, or when using the highway, is charged by the law with the duty of using or exercising a reasonable amount of care to protect himself against being injured by passing vehicles. As is said in *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82, 95 [41 A. L. R. 1027, 239 Pac. 709] : ''Pedestrians, as is true of every person who travels over the highways by whatsoever means or mode, must exercise reasonable or the due amount of care, considering the conditions existing as to the highways, for their own safety. If they fail in the exercise of such care and themselves thereby contribute proximately to the cause of any injury they may sustain at the hands of one having an equal right to use the highways, or if such failure is the sole cause of the damage they have suffered, then, of course, they have no ground upon which to base just complaint.''

It cannot be held, upon the face of the evidence, or as a matter of law, that there is justification for invoking the doctrine of the last clear chance. The evidence shows (and we say it ''shows'' because the trial court, as must be presumed, accepted it) that the child ran on to the pavement

as the defendant was about thirty or forty feet from her, and thus, so it seems, and as the trial court at least impliedly found, there arose a situation of sudden peril in which, if indeed, the defendant could therein by any act or movement of his have averted collision with the child, the exhibition of error of judgment will, in cases of this general character, exonerate the accused from actionable responsibility. It is difficult to conceive what other course the defendant could have adopted under the circumstances. The court could well have concluded from the situation as the evidence exposed it, as it may be presumed that it did conclude, that had not the defendant swerved his car to the left immediately upon observing the sudden darting of the child on to the pavement, the latter would have been struck by the fore part of the machine, with immediate fatal result. And, in this connection, it may further be suggested that the evidence—the testimony of Leonard Clark—tends strongly to warrant the inference that had the child not stooped to pick up the paper which had blown from her hands to the pavement, the swerving to the left of the car by the defendant would have saved her from being struck and injured. To the complaint that the defendant was negligently remiss in his duty, under the circumstances, by failing to sound the horn attached to his car on observing the child, when about thirty or forty feet ahead of him, suddenly run back to the pavement, is sufficiently answered by the suddenness of the situation thus produced and the obvious inference following therefrom as well as from his own testimony that his mind, with a suddenness equal to and contemporaneously with the suddenness of the production of the situation, was charged more with concern as to how to manage or manipulate the car so as to avoid disaster than with the less important matter (at that particular point of time) of sounding by means of the horn what appears would have been a belated warning. It was thus a case in which the judge could reasonably have expressly found, and impliedly did find, that "an emergency existed in which the exercise of ordinary care demanded the stopping (or, as here, the swerving) of the car, and not the sounding of a warning." (*Neff* v. *United Railroads of San Francisco,* 188 Cal. 722, 725, 726 [207 Pac. 243].) But the plaintiff goes further than this and insists that it was the duty of the defendant, having increased the speed of his car

from fifteen to twenty-five miles an hour, after he saw the children, including the deceased, leave the pavement when he was about one hundred feet from them, and proceed to walk on the unpaved portion of the highway, to anticipate that the children would return to the highway unless he warned them of his approach, and that, therefore, he should have sounded warnings long before he reached a point within thirty or forty feet only of the point from which the little girl ran on to the pavement. In this connection, counsel cite the case of *Hatzakorzian* v. *Rucker-Fuller Desk Co., supra,* and the cases therein cited as follows: ''That it is the duty of a driver of an automobile to anticipate the presence of pedestrians upon the highway over which he is thus traveling, is thoroughly settled as a part of the law of the road and is emphasized in *Zarzana* v. *Neve Drug Co.,* 180 Cal. 32, 37 [15 A. L. R. 401, 179 Pac. 203], and in *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 Pac. 125]. In the first named of these cases it is said: 'Aside from the mandate of the statute the driver of a motor vehicle is bound to use reasonable care to anticipate the presence on the streets of other persons having equal rights with himself to be there.' In the case last mentioned the court said: 'He (the driver) still remains bound to anticipate that he may meet persons at any point of the street, and he must, in order to avoid a charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution, and if the situation requires he must slow up and stop. (*Kessler* v. *Washburn,* 157 Ill. App. 532; *Zarzana* v. *Neve Drug Co.,* 180 Cal. 32 [15 A. L. R. 401, 179 Pac. 203].)' ''

It is, of course, the duty of operators of motor vehicles over the streets and highways of the state constantly to keep in mind the probability of encountering other persons using such streets and highways either as pedestrians or motorists. They must anticipate that such a situation may arise at any moment. In other words, they will not be permitted to close their eyes to the fact, of common knowledge in these days of dangerously ''rapid transit'' over the common highways of the state, that they may at any instant of time meet or overtake motorists or pedestrians traveling in or from the same direction in which they are going. Pedes-

trians, too, as is obvious and has already been shown above, must, when using the highways and streets of the state, use a reasonable *quantum* of care for their own safety. In the present case, "anticipation" had passed into actual knowledge of the presence upon the highway in front of him of pedestrians moving in the direction in which he was traveling; but, at the time he observed this, he also saw those pedestrians (the children, including the deceased), upon the near approach of an automobile toward them, pass from the pavement to the side thereof or the unpaved portion of the highway, a place of safety for pedestrians; that he thereupon accelerated the speed of his car to twenty-five miles an hour upon the assumption that, they having shown, as he noticed, that they fully appreciated the danger of using the pavement by their act in leaving it and moving to a place of safety when they saw the approach of a car from the opposite direction, the children would either proceed on their way on the unpaved portion of the highway, or, if desiring or intending to return to the pavement, would, before doing so, take the precaution to ascertain whether, at that time, any motor vehicle was in sight and approaching them from either direction. And the evidence shows that all the children remained in the place of safety to which they had taken refuge until the deceased, when the car was within so short a distance from her that it could not be stopped, save, as it clearly appears, in the manner employed by the defendant, suddenly ran on to the pavement. Under these circumstances, with which the defendant was familiar before the accident happened, we cannot say that he was not justified in assuming that the children would remain on the unpaved portion of the highway. We agree that it would have been the safer, and, indeed, a highly proper course, for the defendant to have sounded his horn and slackened his speed, as he was approaching the children, so that he could have stopped his car in time to prevent an accident in case the children or any of them suddenly returned to the pavement, but we cannot, under the circumstances of this case, hold, as a matter of law, that it was negligence for him not to have done so. As stated, he had the right to assume that the children left the paved portion of the highway because they regarded it safer to walk along the unpaved portion and that they would not return to the pavement

without exercising such reasonable care as would assure them that no motor vehicle was approaching and in near proximity to them. There is no presumption which the operator of an automobile is required to indulge, when driving over the public highways, that persons using the highway in front of him, whether pedestrians or motorists, will not exercise the care requisite to their own safety, or that such persons are without intelligence and discretion enough to do so. While the contrary presumption may not be indulged by such operator or driver of an autmobile, he, nevertheless, if he be not at the time himself negligent in the use of the highway, has the legal right to assume that such motorists or pedestrians using the highway and in front of him, going either in the same or an opposite direction, are intelligent enough to know that it is their duty while so using the highway to exercise the amount of care necessary to their own safety, and that they will do so. Such an assumption follows from the probability that a thing which naturally ought to be done in circumstances peculiarly common to a particular situation will be done by a person of average intelligence when surrounded or enveloped by such circumstances. Nor can this court, without arbitrarily exercising the power of review to which it is limited in instances such as this, hold, as a matter of law, unless the speed limit is specifically fixed by statute, or unless, in the absence of a provision of law specifically limiting the rate of speed at which an automobile may be driven over the public highways, the evidence in a particular case unquestionably shows that the operator of the car has driven it at an outrageously high rate of speed over a highway where the intrinsic or other conditions of the thoroughfare render such speed abnormally dangerous to other persons traveling over such highway, that a particular rate of speed is unlawful *per se*, or constitutes negligence on the part of the driver. Traveling at a speed of twenty-five miles an hour over a highway under certain conditions might justly be found to constitute a rate of speed amounting to gross negligence. On the other hand, a rate of speed in excess of twenty-five miles an hour might not, under other conditions, subject other persons using the highway at the same time to unusual hazards or perils and, therefore, not amount to negligence. The law regulatory of automotive traffic in force at the time the accident involved herein oc-

curred fixed no definite speed limit at which automobiles might be operated over the public highways of the state. Section 113 of the State Motor Vehicle Act of 1923 (Stats. 1923, p. 553) provided: "Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person."

In *Hatzokorzian* v. *Rucker-Fuller etc. Co., supra,* the supreme court said that the language of the above section, to wit: " 'Careful and prudent manner and at a rate of speed not greater than is reasonable and proper,' is relative and contemplates the peculiar circumstances and conditions under which a car may be operated over a public highway at a particular time—whether it be after nightfall and dark or in the daytime and light, the width of the highway and whether it is one which, by reason of its connections, is or may naturally be expected to be at all times subject to a heavy or light traffic. In other words, said section requires the exercise of that amount of care in driving a motor vehicle over the highways which the circumstances or conditions of the particular occasion exact, having in view the character of the highway and the use to which it is then being put."

In the instant case, the record affords no warrant for holding, as a matter of law, that the rate of twenty-five miles an hour to which the defendant gradually increased the rate of speed of his car, after he had observed the children pass from the pavement to the dirt portion of the road, with the purpose, as he (defendant) stated, of "skipping" by them before they returned to the pavement, if they intended to do so, was or was not an unreasonable rate of speed under all the circumstances and the general conditions then existing on and about the highway, or did or did not constitute negligence. This question, upon the record before us, was for the court to decide upon all the testimony revealing the circumstances under which the misfortune happened—the circumstance that the accident happened in the broad light of day, the traffic conditions existing on the highway immediately preceding and at the time of the accident, and the general situation characterizing the highway with respect

to the rate of speed at which a car might safely be driven just preceding the moment of time at which the fatal injuries were received by the child.

While thus we have considered, from the several viewpoints from which it has been here presented, the proposition that it was .the defendant's negligence which was the proximate or efficient cause of the accident and its regrettable consequences, nevertheless, we again emphasize our conclusion that the trial court's finding that the direct cause of the fatal injuries received by the child was her own negligence is sufficiently fortified to preclude interference therewith by a court of appeal. The consideration of that point and the conclusion following therefrom, as above indicated, would have sufficed for the disposition of this appeal, but counsel for the plaintiff, in their briefs, have presented the case to this court as we have herein considered it, and, we may add without impropriety, in an able and exhaustive fashion, and for that reason we conceived that they were entitled to have the cause reviewed from all the several angles of their argument.

For the reasons stated in the foregoing discussion, the judgment is affirmed.

Plummer, J., and Weyand, J., *pro tem.*, concurred.