[Civ. No. 16725.   First Dist., Div. One.   Mar. 29, 1956.]

LOUIS JACOB, Respondent, v. KEY SYSTEM TRANSIT LINES (a Corporation) et al., Appellants.

Edward J. Rice and Stafford P. Buckley for Appellants.

Smith & Parrish and George W. Hauer for Respondent.

BRAY, J.—In a personal injury action, judgment was rendered on a jury verdict for $10,000 in favor of plaintiff and against defendants Key System and Marie Freestone.*

QUESTIONS PRESENTED

1. Sufficiency of the evidence.
2. Instructions.
3. Was verdict excessive?

1. *Evidence.*

The evidence, viewed most strongly in favor of plaintiff, amply supports the verdict. Plaintiff, 74 years old, boarded defendants' bus. After paying his fare he proceeded down the aisle towards the rear to get a seat. The bus started up. Before plaintiff reached a seat the bus came to a sudden stop, having run into ladders which extended 3 to 5 feet back from Velasco's truck. Plaintiff was thrown to the floor, receiving the injuries complained of. The bus operator testified that as she left the stop where plaintiff claimed to have got on (she doesn't remember whether any passengers got on there or not) "quite a little distance" in front of her was a black sedan. She looked back in her mirror and noticed two or three people in the aisle. She noticed plaintiff proceeding towards the rear. When she looked forward she saw the truck about 20 feet ahead of her, stopped for a red light. She was then traveling 7 to 12 miles per hour. She immediately applied her brakes. The ladders on the truck were not marked with a flag. She didn't see the ladders at first. The bus struck the ladders but not the truck. She never saw the truck when it was moving.

Most of defendants' brief dealing with the question of the alleged insufficiency of the evidence, while containing excellent arguments for a jury, is of little value here because based almost entirely on defendants' conclusions from the evidence. ■ It is clear that the effect of the failure of Velasco to have his ladders flagged was a question for the

*Ramon Cortes Velasco, a truck driver, was a codefendant. The jury found in his favor. Defendants Key System and Marie Freestone attempted to appeal from the judgment in favor of Velasco. As a defendant may not appeal from a judgment in favor of a codefendant (see *Click* v. *Southern Pac. Co.*, 113 Cal.App. 528 [298 P. 839]) we heretofore dismissed that appeal.

jury. Even if it erred in not finding such failure to be a proximate cause of the accident, such error is of no help to defendants. ■ Having in mind that defendants' duty as a common carrier was to exercise the highest care reasonable to protect its passengers from injury, the fact that in broad daylight the bus ran into the ladders on the truck under the circumstances here amply supports an implied finding that defendants did not exercise that degree of care, even if the negligence of Velasco was also a proximate cause of the accident.

■ Nor can we say as a matter of law that plaintiff was guilty of contributory negligence or assumed the risk of being injured. Defendants, merely taking portions of the medical evidence of plaintiff's infirmities (he was 74 years old and had "a borderline heart" and "practically no muscles in his abdomen," and other conditions), contend that plaintiff had such muscular instability as not to be able to stand up in the ordinary operation of a bus. Defendants, however, ignore the other testimony to the effect that despite his physical condition plaintiff was extremely active for his age, did general work around the house, and in the garden, and even climbed trees. Moreover, there was no evidence that plaintiff at the time of the accident was unstable in his walking. The nearest approach to such evidence was a statement by a doctor in discussing the subject of arteriosclerosis (plaintiff had the normal amount of arteriosclerosis for a man of his age), "Some people have it in the extremities and have difficulties in walking." This entire question, if an issue, was a jury one.*

We fail to understand defendants' contention that what threw plaintiff to the floor was not the bus running into the ladders of the truck, but the sudden stopping of the bus in the bus driver's attempt to prevent the bus from colliding with the ladders and therefore defendants could not be liable. Whether the sudden stopping of the bus was caused by the ladders or the brakes of the bus is immaterial on the question

---

*Defendants did not plead either contributory negligence or assumption of risk. Defendants concede that ordinarily such defenses must be pleaded (see *Routh* v. *Quinn*, 20 Cal.2d 488 [127 P.2d 1, 149 A.L.R. 215]; Witkin, Cal. Proc., p. 1536) but contend that nevertheless evidence concerning them was admitted at the trial without objection and therefore it became an issue. (See *Moeller* v. *Packard*, 86 Cal.App. 459 [261 P. 315].) Evidence of plaintiff's physical condition was admitted but we can find nothing in the record to indicate it was offered or considered as evidence of contributory negligence or assumption of risk. No instructions on either subject were offered or given.

of defendants' lack of care in allowing either to happen.

■ Defendants refer to the "imminent peril" or "sudden emergency" doctrine. This doctrine applies only where the person claiming the benefit of it is himself without fault. (See *Mortensen* v. *Fairbanks,* 1 Cal.2d 489 [35 P.2d 1030] ; 111 A.L.R. 1019 ; Rest., Torts, § 296, p. 796.) ■ It was a jury question whether the bus driver was free from negligence in not seeing the ladders in time to avoid hitting them or suddenly stopping.

## 2. *Instructions.*

■ The court read section 510, Vehicle Code (the basic speed law) and section 531 (following another vehicle more closely than is prudent).* Obviously these were proper instructions. It was the jury's duty to determine whether even the slow speed defendants claimed to be traveling was reasonable and prudent in view of the traffic. As to the second instruction, all that needs to be said is that the bus struck the load of the vehicle ahead of it. Defendants' position seems to be that "the jury might have believed the evidence favorable to the defendant," hence no instructions should be given contrary to defendants' theory of the case. This contention needs no answer.

■ The court instructed that if the jury found that defendants' negligence was the proximate cause of plaintiff's injury, plaintiff would be entitled to damages "If any pre-existing condition on the part of the plaintiff has more readily predisposed him to injury . . . even though such negligence would not have caused injury to a person that did not have the pre-existing condition such as the plaintiff had." Defendants have cited no authorities to support their contention that the instruction is erroneous. It is a correct instruction.

■ The court gave the well known instruction to the effect that when one looks in the direction of "an object clearly visible, he sees it." Defendants' contention that it could not be applicable here is not supported by any authority. It is obvious that it was for the jury to determine from all the evidence whether the ladders were "clearly visible" to the bus driver in time for her to have avoided injuring plaintiff.

Defendants make two objections to the giving of res ipsa loquitur instructions. ■ (1) The court instructed that

---

*The court also gave portions of section 626, subdivision (a), requiring a vehicle with a load extending 4 feet to the rear thereof to display a red flag warning.

res ipsa loquitur was applicable as to defendant Key System but not as to Velasco. This was correct. Velasco's duty towards plaintiff was merely that of ordinary care; defendants' duty was to use the highest degree of care. Moreover, the instrumentality which injured plaintiff was the operation of the bus. ▮▮ As between plaintiff and defendants, the fact of the accident raised an inference of negligence, even though the evidence might reveal that the real and sole cause of the accident was the truck's negligence. Such fact, if it were a fact, would have been a matter of defense. Because defendants claimed such defense did not prevent the court from instructing on, and the jury from considering, res ipsa loquitur.

(2) Defendants claim that plaintiff's complaint pleaded specific acts of negligence and that, therefore, the doctrine could not apply. The complaint charged that defendants "did so negligently and carelessly drive, own, operate, maintain, load, protect and guard . . . [its] bus" as to cause it to collide with the rear of the truck and/or its load "and thereby caused plaintiff to be violently thrown in and about said" bus.

In *Sherman* v. *Hartman,* 137 Cal.App.2d 589, 597-600 [290 P.2d 894], we pointed out that there had been considerable confusion in the cases as to what constitutes the pleading of special acts of negligence which would bar the application of the res ipsa loquitur doctrine. We reviewed many of the cases upon the subject, including *Leet* v. *Union Pac. R. Co.,* 25 Cal.2d 605 [155 P.2d 42, 158 A.L.R. 1008], which reviewed other cases. ▮▮ We concluded that in this state there has been a great liberalization of the tests for the application of the doctrine and that regardless of whether the complaint alleges general acts of negligence alone, general and specific acts of negligence, or even specific acts of negligence only, the doctrine may apply depending not upon the type of pleading but whether the allegations show that "the plaintiff knows the specific or underlying *cause* of the accident or is ignorant thereof." (P. 671; emphasis added.) If he knows such cause then the doctrine may not apply. ▮▮ Using such test here, it is obvious that the plaintiff has not alleged any knowledge of the specific acts of defendants' negligence, which caused defendants' bus to collide with the truck. There was nothing in the complaint which barred the application of the doctrine.

### 3. *Damages.*

■ Plaintiff suffered a fracture of the eighth rib, a bruise on the left shoulder, a moderate brain concussion. He suffered great pain. He was 12 weeks in bed. He was required to have a nurse for four weeks. Five or six months after the accident he was still suffering from dizziness. He complained of loss of memory and headache. A nerve specialist treated him several times. His doctor's prognosis of a brain injury was "not favorable." The bills for medical attention, etc., were $628.67. More than a year after the accident plaintiff felt weak without any strength, could not do the things he did before the accident, could not go on a ladder any more, frequently had headaches, dizziness, which he did not have before. Although his memory before the accident was very good it is bad now. His shoulder hurts at night. He uses an infra-red lamp daily on it. Defendants' doctor testified that because of his previous condition (a "borderline heart" and a ruptured abdominal wall) his symptoms will linger longer than they would otherwise. His doctor testified that his symptoms still persisted and were "not favorable" and "do not give good prognosis." We cannot say that an award of $10,000 for plaintiff's injuries was the result of "passion, prejudice, or corruption on the part of the triers of the facts," as we are required to do to upset an amount of damages fixed by the jury and passed upon and approved by the trial court on motion for new trial. (See *Miller* v. *Southern Pac. Co.,* 117 Cal.App.2d 492, 510 [256 P.2d 603]. See also p. 509 for discussion of damages for pain and suffering.)

The purported appeal from the order denying new trial is dismissed. The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied April 27, 1956, and appellants' petition for a hearing by the Supreme Court was denied May 23, 1956.