[Civ. No. 29618.   Second Dist., Div. Three.   July 11, 1967.]

FRANCES C. ROGARS, Plaintiff and Appellant, v. ST. JUDE HOSPITAL, Defendant and Respondent.

Williams & Williams, Ernest George Williams and James J. Williams for Plaintiff and Appellant.

Ball, Hunt & Hart and Donald B. Caffray for Defendant and Respondent.

SHINN, J.*—Frances C. Rogars instituted the present action against St. Jude Hospital for damages for injuries she suffered as a patient, allegedly caused by negligence of the defendant's nurses. In a jury trial verdict and judgment were in favor of the defendant, and the appeal is from the judgment.

The gravamen of the action, in summary, is that following surgery plaintiff, while in the bathroom of her hospital room, suffered a fainting spell; she pressed the emergency button in a call for help and immediately became unconscious; returned to her bed, she was given oxygen, but in the time taken by the nurses in her rescue, and during attention by physicians, she suffered a cardiac arrest and brain damage, due to an insufficient supply of oxygen. She asserted and sought to prove negligence on the part of the nurses in failing to respond promptly to her call for help which was the cause of the delay

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

in the administration of oxygen. There was substantial evidence that after her release from the hospital it was found that Mrs. Rogars was suffering from some impairment of the brain due to an insufficiency of oxygen.

Appellant's contentions are: "I. It is reversible error for the court to gratuitously instruct the jury that respondent was entitled to a presumption of due care. II. The trial court was in error in giving an instruction on imminent peril. III. It was error for the court to deny appellant's requested instruction on res ipsa loquitur. IV. The trial court was in error by permitting Dr. Robert Philips to testify [upon the basis of records of an examination of plaintiff at the request of the California Department of Vocational Rehabilitation, i.e., the disability section of that agency]."

Mrs. Rogars was operated upon by Dr. Stehly, who performed a hysterectomy and appendectomy. The operation was satisfactory; on the second day plaintiff was given lavatory privileges by the physician. On the fourth day plaintiff was experiencing abdominal pains; she was given a "pain" pill by a night nurse. Plaintiff testified that from 7 a.m. until about 7:45 a.m. she operated the nurses' call button three or four times, without response. At 7:45 she went to the bathroom, unassisted; while seated she became dizzy, she pressed the emergency call button, grabbed the assist bar, passed out and came to after being placed in bed.

Dr. Stehly testified that he heard that plaintiff was in trouble; he came to her room about five minutes after she signaled from the bathroom; he found plaintiff in a wheelchair; she was placed in bed, and was immediately administered oxygen; her condition deteriorated, he gave her artificial respiration; she apparently suffered a heart arrest; Dr. Hugh Smith was called in; he performed an external heart massage and the patient effectively responded.

Upon the critical question as to when the nurses came to the aid of plaintiff the testimony of Mrs. Edith Scott was introduced by plaintiff. Mrs. Scott was a patient in the two-bed room with Mrs. Rogars. She testified that during the morning she called for a nurse but none came, that she observed plaintiff summoning a nurse, but none responded up to the time plaintiff went to the bathroom. In a few minutes she heard a crash, a noise like a body was sliding down a bathroom door or wall. Mrs. Scott then rang the nurses' call button; in "a little while" (changed later to 8 or 10 minutes) a nurse's aide or nurse came and was directed to the bathroom; when

the door of the bathroom was opened the body of plaintiff rolled out; the nurse's aide or nurse asked Mrs. Scott to ring for aid, which she did; a nurse arrived within 5 minutes; other nurses came into the room and plaintiff was removed from a wheelchair and placed in bed. The account Mrs. Scott gave of the occurrence was sharply contrary to the description of the incident given by the nurses.

Nurse Maria Ventura testified that she came to work at about 7 a.m.; she went to the room of Mrs. Rogars who was one of her patients; on entering the room she offered Mrs. Scott a bed pan, which was refused; she asked plaintiff whether she wanted anything and plaintiff said "No"; she testified that at 7:30 or 7:40 a.m. she assisted plaintiff by getting her bathrobe and slippers.

Lorraine Van Horne, the head nurse, testified that at 7:05, at the nurses desk the "intercom" light went on; she answered and heard that Mrs. Scott wanted to go to the bathroom; she sent Maria Ventura; after 7:40 a.m. she observed plaintiff in bed waiting to go to the bathroom pending securing of "parry pads" which Maria Ventura was obtaining.

Nurse Sister Frances Therese testified that she was in the nurses desk area; at about 7:55 the emergency light came on and the buzzer rang; she went directly to plaintiff's room with Nurse Linam; Nurses Haarman and Van Horne came in thereafter; the witness assisted in removing plaintiff to a wheelchair; Dr. Stehly came in about five minutes after plaintiff summoned help. Nurse Van Horne testified that she assisted Nurse Therese in removing plaintiff to a wheelchair.

During their deliberations the jury communicated with the court as follows: "Is there any testimony as to when either Dr. Stehly or the interns were called within the five minutes after Mrs. Rogars was found in the bathroom and Dr. Stehly walked into the room? 2. May we have Sister Mary Esther's testimony on her first appearance on the witness stand read back to us? 3. May we have again the judge's instructions pertaining to negligence on the part of the nurses? 4. Is error in judgment by nurses considered negligence?"

There was a conference in chambers as to how the questions were to be answered. The court instructed the jury at considerable length, in part, as follows: "At the outset of this trial, each party was entitled to a presumption of law that every person takes ordinary care of his own concerns. In other words, they are presumed to be free of negligence. These presumptions are a form of prima facie evidence and will support

findings in accordance therewith in the absence of evidence to the contrary. Where there is other evidence that may conflict with such a presumption that ordinary care was taken, it is the jury's duty to weigh that evidence against the presumption and any evidence that may support it to determine which, if either, preponderates. Such deliberations, of course, must be related to and be in accordance with my instructions on the burden of proof.''

Plaintiff contended it was error to give this instruction, and we agree. The witnesses for the defendant testified as to their versions of what took place when they were summoned by plaintiff. The hospital was bound by the testimony of the nurses. It constituted the entire evidence of the hospital upon which it relied to negate the charge of negligence. It was error to instruct that the defendant was entitled to the presumption of due care. (*Ford* v. *Chesley Transp. Co.*, 101 Cal. App.2d 548 [225 P.2d 997].)

Defendant contends that the record fails to show which party requested the instruction, therefore, it must be presumed that it was requested by plaintiff and that the error, if any, was invited. Plaintiff insists that the instruction was given of the court's own motion. We believe this to be the case. The superior court file, which we have ordered up, contains all the instructions that were requested under the usual procedure. There is no instruction such as the court gave. The reporter's transcript of the conference in chambers contains no mention of the instruction. Certainly plaintiff, who was not accused of contributory negligence, would not have requested the instruction. And since the defendant would not have been entitled to it, and presumably did not request it, the court must be given credit for it. There was no invited error. However, we do not believe the error was prejudicial.

Upon the critical issue whether the nurses responded promptly to the emergency call the evidence, by all standards of comparison, was not evenly balanced. We do not weigh the credibility of witnesses as the trier of fact is required to do, but in order to determine whether an error in the trial was prejudicial we must consider the factors which the jurors presumably took into consideration in reaching a conclusion as to the weight of the conflicting evidence.

In reaching their verdict the jurors gave full credit to the testimony of the nurses. Aside from the impressions the jurors would get from listening to and observing the witnesses, there were features of the testimony of Mrs. Scott which challenged

her credibility. One item was her accusatory testimony that no nurse answered the calls she and Mrs. Rogars made over a period of 45 minutes; she also testified that she summoned the nurses when she heard Mrs. Rogars fall, and that it was 8 or 10 minutes before a nurse's aide or a nurse answered her call; she directed her to the bathroom; another nurse came within 5 minutes thereafter.

The emergency button in the bathroom is called the "panic button." Its purpose, of course, is to enable the patient to have immediate help in emergencies, such as the one experienced by Mrs. Rogars. The panel in the nurses desk room gives unmistakable warning of danger. To callously ignore the emergency signal of a patient who had recently had surgery and had gone to the bathroom unattended for the first time, would border on criminal negligence. Serious or even fatal results might follow such flagrant breach of duty. If a professional nurse thus summoned could feel indifferent to the welfare of the patient, self interest would prompt her to avoid a neglect of duty which would, at least, impair her reputation and threaten her employability. Such indifference would be heartless, and that was an accusation against the hospital nurses which the jury understandably rejected. If the jurors had believed the testimony of Mrs. Scott that the nurses were unconcerned for the safety of plaintiff when she summoned help, as Mrs. Scott described, reliance upon her testimony would have compelled a conclusion that the nurses were guilty of unpardonable breach of duty. In weighing the credibility of Mrs. Scott the jury could have believed that Mrs. Scott was a disgruntled patient, who felt that her own calls for attention had been disregarded. She changed her estimate of the delay from "a little while" to 8 or 10 minutes, which indicated that she was not impressed with the need for accuracy and was willing to exaggerate in order to persuade the jurors that the nurses were seriously at fault. It is evident that the jurors did not regard her as an impartial and reliable witness. Her credibility was to be weighed by the reasonableness of her testimony. The emergency button was in the bathroom for a reason. Here the patient was unseen and unattended; any number of things might happen to threaten the patient's safety. The danger was fully recognized. The emergency button was well described as the "panic button." The summons for help had the appeal of the cry of a drowning man, or of a man under attack. But the call came not to bystanders who did not wish to become involved, but to nurses whose profes-

sional duties demanded that they make immediate response to an emergency call. There was ample reason for the jury to reject as unreasonable the testimony of Mrs. Scott that the nurses failed to respond promptly when plaintiff signaled for help.

We are convinced that the error in giving the instruction was not prejudicial. It was but a small part of a lengthy instruction given in response to the questions of the jury. At great length the court expounded upon the duties of nurses and hospitals, in general, and also in particular, purely hypothetical situations. The instruction was essentially repetitious of instructions formerly given. The reference to the presumption as to due care was buried in an avalanche of discussion and had not been mentioned previously.

The instruction on the presumption of due care is improperly given when the party who is favored by it has introduced complete evidence as to his conduct immediately before and during the occurrence of the accident or other incident, for the reason that nothing remains to show the exercise of due care. The same consideration is pertinent to the question of prejudice. The jury would have been unable to find anything in the evidence other than the testimony of Mrs. Scott, which they did not believe, that was inconsistent with the nebulous presumption. In view of the conflicting accounts of the occurrence and the single decisive question of fact, we think the jury would not have considered the vague presumption of the exercise of due care by the nurses to be a factor in assessing the credibility of Mrs. Scott or as adding to the credibility of the nurses. We cannot say that it is at all probable that plaintiff would have prevailed, except for this error.

In the course of the instructing just mentioned the court instructed as follows: ''A nurse or vocational nurse who is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to others is not expected nor required to use the same judgment and prudence that is required of her in the exercise of ordinary care in calmer and more deliberate moments. Her duty is to exercise only the care that an ordinarily prudent nurse or vocational nurse would exercise in the same situation. If at that moment she does what appears to her to be the best thing to do, and if her choice and manner of action are the same as might have been followed by any ordinarily prudent nurse or nurse's assistant under the same conditions, she does all the law requires of her, although in the light of after

events it should appear that a different course would have been better and safer.''

In chambers the court stated it proposed to give the instruction, and plaintiff's attorney objected. Plaintiff points out that the instruction on imminent peril is not available to one whose negligence created the emergency, citing *Vedder* v. *Bircley,* 92 Cal.App. 52 [267 P. 724]; *Edgett* v. *Fairchild,* 153 Cal.App.2d 734 [314 P.2d 973], and *Jacob* v. *Key System Transit Lines,* 140 Cal.App.2d 357 [297 P.2d 569]. This essential qualification of the rule was omitted from the instruction as given, although it was contained in the instruction requested by defendant. This error was additional to the basic error in giving the instruction when it was inapplicable to the evidence. There was no evidence of imminent peril to which the instruction was applicable. Even if an emergency signal could be considered a sudden emergency which would cause the nurses to be confused as to how they should act, which we doubt, the jury would not have understood the instruction to mean that the nurses did not need to respond promptly, and defendant certainly does not contend either that the nurses acted or had a right to act at their leisure. The jury could not have understood the instruction as applying to the failure of the nurses to administer oxygen to plaintiff before the doctor came. They put plaintiff into bed, and there was no evidence that they were required to do more. Plaintiff's own witness, Sister Esther, an administrator, testified that the nurses had no authority to administer oxygen to a patient who was not in bed, and that Dr. Stehly arrived while Mrs. Rogars was still in the wheelchair. There was no evidence whatever that the nurses acted upon impulse and without the exercise of calm judgment. We are convinced that the error was harmless.

The next point is that the court erred in refusing to give two instructions on the doctrine of res ipsa loquitur. Following the prevalent push-button practice of requesting instructions by number, plaintiff's attorney inadvertently pushed the wrong button.

Each requested instruction had a good beginning, but neither one was completed. Each stated questions for the jury to answer: Was the injury one which ordinarily does not occur in the absence of someone's negligence? Was the instrumentality or agency in the exclusive control of the defendant, and was the injury not due to any voluntary action or contribution on the part of the plaintiff? Each instruction ended with ''If, and only in the event that you should find all these

conditions to exist, you are instructed as follows:'' Nothing followed. Nothing was said about an inference of negligence; the instructions were incomplete and told the jury nothing.

We do not reject the claim of error simply because the attorney got his numbers mixed. The court had already stated that a res ipsa loquitur instruction would not be given, and if a proper instruction had been requested it would have been inapplicable to the evidence, and would have been refused.

It is evident that plaintiff's attorneys have been confused by some of the recent court decisions of the Supreme Court on the doctrine. This appears from the argument ''. . . appellant's expert medical witness testified that appellant suffered brain damage caused by a lack of oxygen and that said damage would not have occurred had oxygen been administered at an earlier time, then for these reasons it may be justly inferred that the delay in arriving on the scene and administering oxygen was the cause of appellant's harm, and that neglignce could be inferred *through res ipsa loquitur.*'' (Italics added.) The argument is, in essence, that when the evidence is sufficient to warrant an inference of negligence under the general principles of negligence the jury should be instructed in the res ipsa loquitur doctrine, which, of course, is not the law. We do not here decide what the law is but only what it is not.

Plaintiff's medical testimony was that plaintiff experienced a pulmonary embolism caused by a blood clot which lodged in the lung, causing a condition known as anoxia or hypoxia, and a restriction of the flow of oxygen to the brain. Plaintiff's doctor described this as a common post-operative complication. Consequently there was no evidence that the complication was one which did not ordinarily occur in the absence of negligence in surgery. The same medical evidence was that the embolism probably caused plaintiff to experience the cardiac arrest, which also contributed to the damage to the brain. There was no evidence that it was more probable than not that plaintiff's injuries were due to someone's negligence. The negligence, if any, was the failure of the nurses to promptly come to the aid of plaintiff. The jury had been fully instructed as to the duties and responsibility of the nurses. If the jurors had believed that the nurses failed to promptly respond to plaintiff's call, they could not have failed to find that the nurses were negligent. When there was no need to rely upon the res ipsa loquitur doctrine in determining the issue of negligence, no purpose would have been served by instructing in

the doctrine, and no harm could result to one asserting negligence from the failure of the court to so instruct. This was not a res ipsa loquitur case.

█ The final point is that it was error to permit defendant's psychiatrist, Dr. Philips, to testify to the results of an examination he made of plaintiff before the trial at the request of the disability section of the California Department of Vocational Rehabilitation. It appears that the examination was a part of the procedure for obtaining disability insurance benefits. The testimony of the doctor was objected to upon the ground that medical records of the department are confidential, except that the identity of the claimant may be revealed to the Bureau of Vocational Rehabilitation of the Department of Education. (Unemp. Ins. Code, § 2714.) Admission of the testimony of the doctor is assigned as error. We are not informed in the briefs of plaintiff as to testimony that was given by Dr. Philips. For this reason, and for the further reason that plaintiff failed to establish liability of the hospital, we need not consider this claim of error in the receipt of evidence which related only to damages.

We have said the evidence was not evenly balanced, and by this we mean that we believe the jury experienced little difficulty in resolving the credibility of the witnesses in favor of the nurses. We do not believe there was any error which influenced that decision.

The judgment is affirmed.

Cobey, Acting P. J., and Moss, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 7, 1967. Peters, J., was of the opinion that the petition should be granted.