[Civ. No. 3005. Fourth Dist. May 16, 1942.]

GEORGE CROME et al., Respondents, v. LLOYD J. ALLEN, Appellant.

Alfred Siemon and Bennett Siemon for Appellant.

Brittan & Mack for Respondents.

GRIFFIN, J.—Respondents employed appellant as manager of the sport-goods department of their hardware store in 1935. An oral agreement was then made for the payment to appellant by respondents of a salary segregated as follows: $28.50 a week for his services in the sport-goods department, and $21.50 a week for his services as advertising manager of the entire store. In addition, Allen was to be paid a 10 per cent bonus which is based upon a sales quota of $20,000 a year and a gross profit margin of 27½ per cent on sales from the sport-goods department. No bonus was to be payable unless the sales of his department exceeded the

quota of $20,000. If sales exceeded that minimum, Allen was to receive a bonus on the excess of 10 per cent if the margin of profit in his department was maintained at 27½ per cent. If the margin between cost of doing business and the return therefrom (the margin of profit) either exceeded or fell below 27½ per cent, the sales volume was to be adjusted to show a return of that arbitrary figure and the bonus was then to be calculated on the adjusted figure. About March, 1940, the relationship between appellant and respondents was terminated and a controversy arose out of the mutual accounts between the parties at that time. The solution of this controversy depends on the terms of the oral contract between the parties. Respondents' complaint alleged that certain money was due under an ordinary money had and received count. Appellant answered, denied generally the allegations of the complaint, alleged payment, and by way of counterclaim and cross-complaint claimed that $4,619.09 was due him. The cross-complaint, in addition to many other claims, alleged that in computing the net profits of any given year, the *cost* of the goods to plaintiffs was the basis to be taken. Respondents answered the cross-complaint containing this allegation, admitted certain portions thereof, one of which contained this particular language in reference to the cost.

During the second day of trial respondents moved to amend their answer to the cross-complaint by interlineation and by permission of court added after the word *cost,* as italicized, the words "based on inventory value to cross-defendants" rather than "cost of the goods to plaintiffs."

Appellant now claims that the court erred in allowing the amendment at that time to his prejudice because the allowance of the amendment removed an admission upon which he was entitled to rely under the pleadings, citing *Bank of Woodland* v. *Heron,* 122 Cal. 107 [54 Pac. 537]. We see no merit to this point. This amendment was offered after testimony was taken on the question of how the cost was to be determined. The admission in the pleadings, if it constituted such, was only an admission as to the facts set forth, but was not an admission as to the method by which the cost was to be determined. The effect of the change was to charge to appellant his share of any depreciation in price of the merchandise in the sport-goods department because of goods be-

coming old or shopworn, instead of throwing all of the depreciation onto the store. This was in accordance with the testimony produced by respondents on the subject. ██ Amendments to correspond to the proof, if not prejudicial, are favored. (21 Cal. Jur. p. 207, § 142, et seq.) There was no surprise occasioned to appellant's counsel in permitting the amendment to show the terms of the contract relating to the inventory because early in the case appellant's then counsel stated: "We evidently will have a dispute in the evidence about the terms of this contract, all facts relating to this contract are proper in evidence to show the reasonableness of the statements of the parties. . . ." No request was made for a continuance on this or any other ground. The inventories were all produced in evidence and full cross-examination allowed concerning them. No showing of abuse of discretion has been made. The allowance of the amendment was discretionary and will not be disturbed on appeal. (Sec. 470 Code Civ. Proc.; *Kamm* v. *Bank of California,* 74 Cal. 191 [15 Pac. 765]; *Williams* v. *Flinn & Treacy,* 61 Cal. App. 352, 357 [214 Pac. 1024]; *Fetterley* v. *Gibson,* 210 Cal. 282 [291 Pac. 411].)

██ Appellant for several years served in the capacity of advertising manager and also as manager of the sport-goods department, and drew the apportioned salaries. It appears from respondents' evidence that about January 1, 1939, another advertising manager was hired and paid a salary in place of Allen. The evidence discloses that Allen was then told that "his department was falling behind and also that the advertising was being neglected and that we would have to make other arrangements insofar as the advertising was concerned . . . and that he would be relieved at the beginning of 1939 of that responsibility, and, of course, also of the income for it. . . . I told him, however, we wouldn't reduce the amount of his check for the time being, but the 21.50 that he had been paid as advertising manager would be considered as a cash advance. . . ." Respondents continued to pay appellant a total of $50 per week over the remaining period but charged $21.50 per week, the amount he had been receiving as advertising manager, against his bonus account. Allen denied any such change in arrangements and contended that the $21.50 per week was not a proper charge against his bonus. However, he did admit that he had a conversation

with respondents regarding a change of advertising policy. He testified in answer to the question: "What was that conversation?" "A. Simply that they were hiring somebody else as general advertising manager and that my duties would be changed accordingly. Q. And did he say anything about your salary? A. He did; he said that there would be a change, but there wasn't any exact amount mentioned." During 1939 and 1940, Allen had drawn several hundred dollars from the store as advances on his bonus. The record discloses that shortly after the end of the year 1939, appellant received a statement of his earnings and bonus for 1939. On this statement his salary for the year was indicated as $1,482, which was figured at $28.50 per week. Appellant made no complaint at that time in reference to the statement or the cash advance against his bonus. The two versions of the oral contract in this regard were matters for the trial court's consideration, and it appears from the record that the court's version was substantially supported.

The only remaining question presented is whether appellant was entitled to have his bonus figured at the end of the year upon a basis of the original cost to the company of the goods on hand, or whether the cost should be determined from the inventory value of those goods. The evidence in this regard, as to the oral agreement, is conflicting. A Mr. Stone, manager of respondents' store, testified in this respect that he had a conversation with Allen when he was hired and that he told him about handling deductions in the inventory and that he said to him "the cost of goods sold, the inventory's determining factor, and that our inventories are taken on a basis of the cost or market, whichever is lower." He also testified that that method of calculating costs was a common practice and that similar deductions were made as to other departments in this store; that he had discussed those methods of deductions with appellant "throughout the time he was there"; and particularly at inventory times it was mentioned about depreciating shopworn merchandise at less value.

Originally, appellant questioned the returns from the year 1938, and charged that respondents had fraudulently charged his department for that year with hundreds of dollars worth of goods which had not been purchased by him. Respondents permitted appellant to employ an auditor to audit the books for that year. Instead of the shortage claimed, he found the

books to be correct. Appellant abandoned further claim to any amount due him for that or previous years.

Allen testified that he was present when the 1939 inventory was taken and that some of the employees told him then that the inventories were being "marked down" due to depreciation; that he knew that if goods were marked down that they would have to be carried on the inventory at the marked-down price the next time they were inventoried and that then "he would be bound by that inventory." There was no evidence of falsification of any of the accounts between appellant and respondents. The evidence substantiates the court's findings and judgment.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.