[Civ. No. 21427.   Second Dist., Div. Two.   July 24, 1956.]

LAWRENCE C. JONES, Respondent, v. GERALD E. SHEARS, Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Appellant.

Herbert W. Simmons, Jr., and Charles B. Johnson, for Respondent.

FOX, J.—Plaintiff recovered a judgment for $30,000 damages against defendant for an assault. Defendant appeals.

In his complaint plaintiff charged that defendant "wrongfully, unlawfully and violently assaulted" him by firing "a shot from a loaded gun at plaintiff," the bullet entering the left side of plaintiff, just below his rib cage, and lodging in his spine; that he received serious injuries, some of which are permanent in nature. He further charged that "the defendant acted maliciously and was guilty of a wanton disregard of the rights" of plaintiff.

In his answer defendant stated he was a deputy sheriff of Los Angeles County and that on the occasion in question, as such officer, he was in the process of placing plaintiff under arrest for a public offense committed in his presence, to wit, driving through a red light at an intersection and driving on the left side of the highway; that plaintiff unlawfully resisted arrest; that he used only such force as was necessary to place plaintiff under arrest; that such force consisted of his firing a shot from his service revolver, the bullet entering plaintiff's left side; that plaintiff's injury was caused by his unlawful resistance of defendant while the latter was acting in the lawful discharge of his duty as a peace officer. Defendant further alleges that after the commission of said public offenses and prior to the arrest of the plaintiff, defendant was forced to pursue plaintiff during the course of which pursuit plaintiff attempted to force defendant's automobile off the highway; that defendant succeeded in causing plaintiff to bring his car to a stop and while defendant was about to place plaintiff under arrest, plaintiff "advanced

toward defendant in a threatening manner, refused to put his hands up on command, and reached his right hand toward his rear pocket, from which said actions defendant had reasonable cause to believe, and did believe, that said plaintiff was about to assault defendant with a deadly weapon; that acting on said belief and in self-defense,'' defendant shot plaintiff.

The locale of this unfortunate affair was on Mountain Avenue, just south of Huntington Drive, in the city of Monrovia. The time was approximately 6 o'clock Sunday afternoon, September 2, 1951. After having had refreshments at a drive-in on the southeast corner of Mountain Avenue and Huntington Drive, plaintiff, who was accompanied by Miss Ages and Sherman Buchanan, drove out on Mountain and turned south. Apparently this highway accommodated only two lanes of traffic—one each way. It had occasional holes or depressions in it, rough shoulders, and a line of telephone poles on the east side. Plaintiff's automobile was a 1941 Mercury, in good mechanical condition except that one of the front wheel bearings was a little loose which caused the car to shake a bit when it hit a bump. Jones was driving south on Mountain at a speed of 20 to 25 miles an hour when he observed a car behind him being driven by defendant, who acted as though he wanted to pass on two or three occasions but dropped back each time. Jones testified his car swerved across the center line once because he hit a rut in the road. Finally defendant waved his revolver and "hollered" that Jones stop. Jones pulled to the side of the highway and stopped. Defendant, who had his family and his brother-in-law and his family with him, stopped behind the Jones car. Both plaintiff and defendant got out of their cars and approached each other. Jones' account of what then transpired is that he took "two or three steps" in the direction of defendant who commanded: "Get your hands up"; that he stopped and "as I proceeded to get my hands up I was shot." As might be expected, defendant's account of the events leading up to the shooting is somewhat different. He claims that in attempting to pass Jones the latter had forced him "to turn very sha[a]ply to avoid a collision" and that the left wheels of his car were forced off the paved portion of the road onto the shoulder. Upon a repetition of this experience, defendant exhibited his revolver and ordered Jones to stop. Defendant's version of the events that took place after he and plaintiff got out of their cars is as follows: "I had my

badge in my left hand and my gun in my right hand, and as he got out of the car I told him to put up his hands and stay where he was. He took about three or four steps toward me and then his right hand reached in his right pocket and he turned at the same time so his left side was more or less facing me and I couldn't see his right hand. At that time I shot him. I also before that hollered to him that I am a deputy sheriff, and 'Put up your hands' and I hollered as loud as I can.''

Plaintiff denied he reached toward his rear pocket with one of his hands. He did not have either a gun or a knife on his person.

After this incident, Shears filed a criminal complaint in the Monrovia justice court charging Jones with assault with a deadly weapon, a felony, in violation of section 245 of the Penal Code. This was based on Jones' asserted actions in trying to force Shears' car off the highway. Jones was held to answer but the case was dismissed in the superior court on motion of the district attorney ''on the ground of insufficient evidence.''

At the conclusion of the instant trial, defendant moved to amend his answer to conform to proof and offered for filing an amended answer wherein he alleged that he arrested Jones for ''assault with a deadly weapon, in violation of section 245 of the Penal Code, a felony.'' The motion was denied.

The court found that Shears committed the acts here in question in his official capacity as a deputy sheriff of Los Angeles County in the process of placing Jones under arrest for a misdemeanor, to wit, driving through a red light in violation of the Vehicle Code, and driving on the left-hand side of a highway also in violation of said code; but that Jones had not in fact committed such offenses and that Shears had not seen him do so and had no knowledge of any such traffic violations on the part of Jones. The court found that ''plaintiff . . . did not resist or attempt to prevent his arrest by the defendant'' and ''did not advance towards the defendant . . . in a threatening manner or refuse to put up his hands on command of the said defendant . . . and that the plaintiff . . . did not reach his hand toward his rear pocket or make any movement whatsoever.'' That plaintiff gave defendant ''no reasonable cause or any cause to believe the plaintiff . . . was about to assault the defendant . . . with a deadly weapon or with any weapon whatsoever''; that plaintiff had no weapon in his possession and that defendant

had no fear that plaintiff intended to cause him any harm, or attempt to resist arrest. The court further found that defendant in his official capacity as a deputy sheriff of Los Angeles County, ''did wrongfully, unlawfully and violently assault the plaintiff'' by firing a shot from a loaded revolver at plaintiff, which lodged in plaintiff's spine and which has not been and cannot be removed. Finally, the court found that in so doing, defendant acted ''maliciously and was guilty of a wanton disregard of the rights'' of the plaintiff.

In seeking a reversal, defendant's principal contention is that ''the filing of a verified claim with the defendant and the county was a necessary prerequisite to maintaining the action.'' This contention is based on sections 1981 and 2003[1] of the Government Code. The material portion of section 1981 reads: ''Whenever it is claimed that any person has been injured . . . as a result of the negligence or carelessness of any public officer or employee occurring during the course of his service or employment . . . a verified claim for damages shall be presented. in writing and filed with the officer or employee and the clerk or secretary of the legislative body of the . . . county . . .''

It will be noted that section 1981 requires the filing of a written verified claim with the officer or employee and with the clerk of the legislative body of the county as a condition to maintaining an action where a person claims that he has been injured *as a result of the negligence or carelessness* of such public officer or employee occurring during the course of his service or employment. It is apparent that section 2003 of the Government Code deals with the same subject matter, viz., injury caused by the negligence of a public employee. .

Plaintiff takes the position that since these code sections requiring the filing of claims specifically refer to injury or damage caused by the negligence of a public employee they do not apply to his case and therefore he was not required to

---

[1]This section was enacted at the 1951 legislative session and became effective September 22d of that year. This was 20 days after the incident that is the basis of the instant suit. Assuming, but without so deciding, that the section became effective in time to be applicable to the within action, we quote its provisions:

''A cause of action against an employee of a district, county, city, or city and county for damages resulting from any negligence upon the part of such employee while acting within the course and scope of such employment shall be barred unless a written claim for such damages has been presented to the employing district, county, city, or city and county in the manner and within the period prescribed by law as a condition to maintaining an action thereon against such governmental entity.''

file any claim either with the officer or the county.[2] His thesis is that his action is not based on negligence. An examination of the record discloses that his position is sound.

In his complaint plaintiff does not charge defendant with negligence but with the commission of an assault and battery upon him by firing a shot at him which entered his left side. He charges that ''The defendant acted maliciously'' in so doing. In his answer defendant does not allege that he negligently shot plaintiff. He asserts that he acted in self-defense, and that plaintiff ''unlawfully resisted arrest,'' whereupon he ''used only such force and no more'' as ''was reasonably necessary to place plaintiff under lawful arrest.'' His testimony was in harmony with these allegations. However, the trial court did not give credence to his story. The court found that in shooting plaintiff, defendant committed an ''assault'' upon him and that in so doing he acted ''maliciously.'' The evidence supports this finding. █ Thus, upon the basis of the pleadings, the evidence and the findings, this is not an injury caused by the negligence of the defendant while acting in his official capacity but rather an intentional tort (*Lowry* v. *Standard Oil Co.*, 63 Cal.App.2d 1, 5 [146 P.2d 57]), and as such it is not within the purview of sections 1981 and 2003 of the Government Code. (*Reynolds* v. *Lerman*, 138 Cal.App.2d 586, 591 [292 P.2d 559].) It was therefore not necessary for plaintiff to file a claim with the defendant and the county.

█ Defendant vainly argues that the court prejudicially erred in denying his motion to file an amended answer to conform to the proof. Defendant, of course, knew the charge on which he was arresting Jones. Not long after this affair he filed a criminal complaint against Jones charging him with a violation of Penal Code, section 245, a felony. He undoubtedly testified at Jones' preliminary hearing in the Monrovia justice court on October 11th when Jones was held to answer in the superior court. It was after these events that defendant filed his answer stating that he arrested Jones for having committed a misdemeanor in his presence, to wit, driving through a red traffic light and driving on the left side of the highway in violation of the Vehicle Code. He then alleged that ''defendant was forced to pursue said plaintiff during the course of which pursuit the plaintiff attempted to force defendant's automobile off the highway.'' More than a year

---

[2] The county is not a party to this action.

later and at the conclusion of the trial, defendant moved to amend his answer to allege that he arrested Jones for "assault with a deadly weapon, in violation of section 245 of the Penal Code, a felony," without any satisfactory explanation as to why he had not made this motion more seasonably. Such a motion is addressed to the sound discretion of the trial court and its ruling will not be disturbed in the absence of a showing of a clear abuse of discretion. We find no such showing here.

Furthermore, there was obviously no prejudice to defendant, for the trial court found Jones "did not resist or attempt to prevent his arrest by the defendant" and that he "gave the defendant no reasonable or any cause to believe that the plaintiff . . . was about to assault the defendant . . ." On the basis of these findings as to plaintiff's conduct it could make no difference whether defendant was arresting him for a misdemeanor or a felony. In either case he had no right to shoot him. (Civ. Code, § 43.) It follows that it is wholly immaterial that the court found the shooting took place while Shears was arresting plaintiff for traffic violations in accordance with his statements in his verified answer rather than for a violation of section 245 of the Penal Code.

Defendant's contention, that finding VII to the effect that at the time defendant was placing plaintiff under arrest "the plaintiff did not advance towards the defendant . . . in a threatening manner and refuse to put up his hands on command of the said defendant . . . and that the plaintiff . . . did not reach his hand towards his rear pocket or make any movement whatsoever" is not supported by the evidence, is lacking in merit. In addition to the evidence to which we referred in the statement of the case, *supra,* the following transpired during the cross-examination of plaintiff by defendant's counsel: "Q. Were you still moving towards him at the time he shot? A. I took about three or four steps and stopped.

"Q. Did you stop before he shot? A. When I stopped he said, 'Get your hands up,' and I stopped.

"Q. Did you put your hands up immediately? A. I put my hands up.

"Q. What did you do prior to putting your hands up? A. Nothing.

"Q. You did not reach toward your rear pocket with one of your hands? A. No . . .

"THE WITNESS: I did not reach for nothing.

"Q. By THE COURT: Did you have anything in your rear pocket when you put your hands up? A. I had a handkerchief . . .

"Q. By THE COURT: Were you reaching for your handkerchief? A. No, I just put my hands up."

On re-cross examination of plaintiff these questions and answers appear:

"Q. You also testified you stopped and put your hands up when he ordered you to and you did not make any movement toward your rear pocket, is that correct? A. When he said 'Get your hands up' I put my hands up.

"Q. You recall I asked you if you reached for your rear pocket and you said you did not? A. I did not."

In this connection reference should be made to the testimony of Mrs. Mary Louise Johnson, who lived at 1434 South Mountain Avenue, in front of whose home the cars stopped. She heard "some yelling" and went to the front door. She saw the parties get out of the cars. Shears "started walking up to the front car. The other fellow [Jones] just stepped outside of his car . . .

"Q. Then what happened? A. Then Mr. Shears shot him."

She further stated that the parties were less than 10 feet apart; that Jones "had just stepped out—away from the door of the car . . ." It is apparent that the evidence is ample to support the challenged finding.

Defendant seeks to discredit plaintiff's testimony by showing that he made statements on other occasions in conflict with his testimony on the witness stand. This was a problem for the trial judge. ▮ This court may not reweigh the evidence or reevaluate the credibility of the witnesses.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.