[Civ. No. 33621. First Dist., Div. One. Jan. 16, 1976.]

UNION BANK, Plaintiff and Respondent, v.
CHARLES A. WENDLAND, Defendant and Appellant.

394

## Counsel

Carroll, Burdick & McDonough and H. Keith Hastings for Defendant and Appellant.

Spaeth, Blase, Valentine & Klein, George C. Fisher and Peter A. Whitman for Plaintiff and Respondent.

OPINION

MOLINARI, P. J.—Defendant appeals from a judgment in favor of plaintiff (hereinafter "Union Bank") in an action upon a promissory note. The issues presented are whether the trial court erred in finding that said promissory note was not intended by the parties to be secured by a first deed of trust executed by defendant; whether the cause of action to recover upon said note was barred by the antideficiency provisions of section 580d;[1] whether the trial court erred in denying defendant's motion for leave to amend his answer to conform to proof; and whether plaintiff's interest under a second deed of trust executed by him as security for said note was discharged by merger and a judgment upon said note was therefore prohibited by section 580d.

In 1966 defendant purchased a parcel of real property improved with a residence ("the residence") for the sum of $26,500. On September 1, 1967, defendant and his wife borrowed $28,000 from The Stanford Bank. As evidence of this indebtedness they executed a promissory note ("the first note") and as a security for its payment they executed a deed of trust ("the first deed of trust") which granted the residence to a trustee with power of sale. Subsequently, defendant borrowed $6,000 ("the second note") from The Stanford Bank for the purpose of remodeling the residence. On March 13, 1969, defendant borrowed $10,973.40 from The Stanford Bank. As evidence of this indebtedness defendant, as the sole maker, executed a promissory note ("the third note") and as security for its payment a deed of trust ("the second deed of trust") was executed by both defendant and his wife pursuant to the terms of which the residence was granted to a trustee with power of sale. The proceeds of the latter loan were used by defendant to pay and discharge the second note and the balance was applied to payments due under the terms of the first note.

On March 26, 1971, The Stanford Bank merged into Union Bank. Thereafter, defendant and his wife having defaulted in the payments due under the first note, the residence was sold by the trustee under the

---

[1]Unless otherwise indicated all statutory references are to the Code of Civil Procedure.

power of sale granted under the first deed of trust and the residence was purchased by Union Bank. The residence was subsequently sold by Union Bank for $20,000.

On January 25, 1972, Union Bank filed a complaint against defendant on the third note. The complaint alleged that defendant was in default on the payments due on the note and prayed for judgment in the sum of $9,584.92 principal and accrued interest, and for reasonable attorneys' fees.

Defendant answered the complaint denying that he was indebted on the third note in the sum of $9,584.92, or in any amount, or at all. As an affirmative defense he alleged that the complaint did not state facts sufficient to constitute a cause of action in that the complaint sought a deficiency judgment "and therefore is barred by the provisions of Section 580b of the Code of Civil Procedure . . . ."

The matter came on for trial without a jury. Following the submission of the case defendant moved for an order vacating the order of submission and also moved for leave to amend his answer to conform to proof. The amendment proffered alleged that plaintiff's cause of action was barred by the provisions of section 580d. The record does not disclose whether the court ruled upon the motion to set aside the submission. The motion was apparently denied because the court made its order denying defendant's motion for leave to amend to conform to proof and proceeded to make its memorandum decision upon which findings of fact and conclusions of law were subsequently made.

The trial court found that the third note was secured by the second deed of trust on the residence; that the second deed of trust was valueless because the residence had been sold to satisfy the indebtedness due under the first note secured by the first deed of trust; that at the time the residence was sold pursuant to the first deed of trust it had a fair market value of $25,000; that the amount of indebtedness on the first note was in excess of $32,000; that Union Bank purchased the residence at the sale under the first deed of trust for $17,000; that the second deed of trust was not given to Union Bank to secure repayment of a loan which was used to pay all or part of the purchase price of the property it secured; that the third note was not intended by the parties to be secured by the first deed of trust; that defendant had defaulted on the third note; that the amount due thereon for principal and interest is $8,921.90, plus interest at the rate of 7 percent from June 10, 1971; and that Union Bank has incurred

reasonable attorneys' fees in the amount of $3,000. Judgment was entered accordingly.

Before proceeding to discuss the issues presented on appeal we observe that defendant's affirmative defense, as tendered by the pleadings, was that the first deed of trust was a purchase money transaction and therefore section 580b barred any deficiency judgment.[2] The theory of this defense was that the amount represented by the third note, which is the subject of the instant action, constituted an additional sum advanced pursuant to the terms of the first deed of trust and was secured by the first deed of trust. Accordingly, it was urged that, since a deficiency judgment could not be obtained upon a sale of the residence under the first deed of trust, no recovery could be had upon a suit on the third note.

The pertinent clause in the first deed of trust, in relevant part, provides as follows: "1. That Trustor, for the purpose of securing (a) the payment of Trustor's promissory note of even date herewith in the principal sum of $28,000.00 payable to Beneficiary, or order, and all extensions and renewals thereof, . . . (c) the payment of all sums of money with interest which may be paid out or advanced by, or may otherwise be due to Trustee or Beneficiary under any provisions of this Deed of Trust, and (d) the payment of additional sums and interest thereon now or hereafter due or owing from Trustor (or any of them) to Beneficiary, hereby irrevocably grants, transfers and assigns to Trustee in trust with power of sale, that certain real property . . . ."

■ The foregoing clause, sometimes referred to as a "dragnet" clause, has the effect of making the security instrument security for the debtor's past, present and future obligations to a particular creditor. (See *Lomanto* v. *Bank of America*, 22 Cal.App.3d 663, 666, 669-670 [99 Cal.Rptr. 442]; *Gates* v. *Crocker-Anglo Nat. Bk.*, 257 Cal.App.2d 857, 859-861 [65 Cal.Rptr. 536]; *Langerman* v. *Puritan Dining Room Co.*, 21 Cal.App. 637, 642-644 [132 P. 617]; and see Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) § 4.18, p. 152.) Future advance and "dragnet" clauses have long been held valid in California. (See *Tapia* v. *Demartini*, 77 Cal. 383, 386 [19 P. 641]; *Oaks* v. *Weingartner*, 105 Cal.App.2d 598, 601, 602 [234 P.2d 194].)

---

[2]Code of Civil Procedure section 580b provides, in pertinent part, that "No deficiency judgment shall lie in any event after any sale of real property . . . under a deed of trust . . . given to the vendor to secure payment of the balance of the purchase price of real property. . . ."

As respects the creation of a lien, we observe that Civil Code section 2884 provides: "A lien may be created by contract, to take immediate effect, as security for the performance of obligations not then in existence."

■ Section 580b is clearly inapplicable in the present case and the trial court so found. The first deed of trust was not given as security for the purchase money within the meaning of section 580b. Defendant testified that he purchased the subject real property in 1966. He was unclear as to how he financed the purchase of the property stating that it was financed through a loan from a savings and loan association and that he believed that the seller of the property financed part of the purchase price by way of a promissory note secured by a deed of trust. Defendant stated that the $28,000 he borrowed from The Stanford Bank on September 1, 1967, i.e., the first note, went to pay off the loan to the savings and loan association and that a balance of $4,000 that remained went into his business account.

The purpose of section 580b is to relieve the purchaser of real property from personal liability to any person who finances the purchase of said property and takes as security a trust deed or mortgage on the property purchased provided the financier intended the loan to be used to pay all or part of the purchase price. (*Bargioni* v. *Hill,* 59 Cal.2d 121, 123 [28 Cal.Rptr. 321, 378 P.2d 593]; *Heckes* v. *Sapp,* 229 Cal.App.2d 549, 552 [40 Cal.Rptr. 485].) In the instant case no part of the monies obtained pursuant to the loan evidenced by the first note was used for the purchase price of the residence, nor were any of the monies obtained pursuant to the loan evidenced by the third note used for this purpose. The former went to refinance the property, i.e., to pay off the purchase money loan received from the savings and loan association and to obtain additional funds for defendant's business account; the latter to pay off the second note and the balance was applied to payments due under the terms of the first note.

Section 580b was drafted to protect purchasers under the standard purchase money mortgage transactions in which the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. (*Spangler* v. *Memel,* 7 Cal.3d 603, 610 [102 Cal.Rptr. 807, 498 P.2d 1055]; *Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35, 41 [27 Cal.Rptr. 873, 378 P.2d 97].) " 'Variations on the standard are subject to section 580b only if they come within the purpose of that section.' " (*Spangler* v. *Memel, supra; Roseleaf* v. *Chierighino, supra.*) The loan

transactions with The Stanford Bank are variations from the standard that do not come within the purpose of section 580b. Accordingly, when defendant refinanced the property through the September 1967 loan from The Stanford Bank he lost the purchase money protection afforded by section 580b.

Defendant's proper defense to plaintiff's complaint under the antideficiency statutes, if any, was that afforded by section 580d, which provides in part: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property hereafter executed in any case in which the real property has been sold by the mortgagee or trustee under power of sale contained in such a mortgage or deed of trust. . . ." Defendant apparently recognized that the proper defense was under this section since he sought to amend his answer to conform to proof to allege that plaintiff's cause of action was barred by the provisions of section 580d. He sought such an amendment after the case had been submitted for decision.[3] As already indicated, one of the issues presented on appeal is whether the trial court abused its discretion in denying defendant's motion for leave to amend to conform to proof.

■ The granting or refusal to amend an answer is largely within the discretion of the court. (*Trower* v. *City and County,* 157 Cal. 762, 769 [109 P. 617]; *Jones* v. *Shears,* 143 Cal.App.2d 360, 365-366 [299 P.2d 986].) "This is true of amendments for the purpose of setting up the statute of limitations, as well as other amendments." (*Trower* v. *City and County, supra;* see *St. Paul Title & Trust Co.* v. *Stensgaard,* 162 Cal. 178, 180 [121 P. 731]; *Stoops* v. *Pistachio,* 70 Cal.App. 772, 776-777 [234 P. 423].) The discretionary power vested in the court extends to amendments to conform to proof. (*Campagna* v. *Market St. Ry. Co.,* 24 Cal.2d 304, 308 [149 P.2d 281]; *Valencia* v. *Shell Oil Co., supra,* 23 Cal.2d 840, 848; *Pitts* v. *Fletcher,* 169 Cal.App.2d 858, 860 [338 P.2d 244].)

■ Amendments to conform to proof, if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation. (*Groover* v. *Belmont,* 114 Cal.App.2d 623, 627 [250 P.2d 66]; *Crome* v. *Allen,* 52 Cal.App.2d 137, 140 [125 P.2d 898]; see *Lavely* v. *Nonemaker,* 212 Cal. 380, 385 [298 P. 976].) ■ The basic rule applicable to

---

[3]Amendments to conform to proof may be allowed after the case is submitted for decision. (*Valencia* v. *Shell Oil Co.,* 23 Cal.2d 840, 848 [147 P.2d 558]; *Foster* v. *Keating,* 120 Cal.App.2d 435, 444 [261 P.2d 529]; *Richards* v. *Tavares,* 105 Cal.App. 261, 269 [287 P.2d 552]; see *Hodge* v. *Hodge,* 257 Cal.App.2d 31, 37 [64 Cal.Rptr. 587]; *Vick* v. *Grasser,* 169 Cal.App.2d 692, 698-699 [338 P.2d 223].)

amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded. (*Grudt* v. *City of Los Angeles,* 2 Cal.3d 575, 583 [86 Cal.Rptr. 465, 468 P.2d 825]; *Austin* v. *Massachusetts Bonding & Insurance Co.,* 56 Cal.2d 596, 600-601 [15 Cal.Rptr. 817, 364 P.2d 681]; *Landis* v. *Superior Court,* 232 Cal.App.2d 548, 555-556 [42 Cal.Rptr. 893].)

In the present case the proffered amendment to conform to proof was based upon the same general state of facts as those upon which the affirmative defense predicated upon the provisions of section 580b was grounded. All of these facts were before the court without objection. The whole theory of the defense was that plaintiff was not entitled to a deficiency judgment. The proffered amendment was for the evident purpose of pleading the only deficiency judgment statute that could possibly apply to the facts of this case and to conform to the evidence adduced.

 I conclude that it was an abuse of discretion to deny defendant's application for leave to amend to conform to proof. However, although the amendment was not permitted the evidence purporting to show that the action was barred by section 580d was offered by defendant and the issue whether the action was barred by the antideficiency provisions of that statute was clearly before the court and is determinative of the instant action. (See *Hollypark Realty Co.* v. *MacLoane,* 163 Cal.App.2d 549, 552 [329 P.2d 532]; *Smith* v. *Smith,* 115 Cal.App.2d 92, 99 [251 P.2d 720]; *Moeller* v. *Packard,* 86 Cal.App. 459, 460 [261 P. 315].) All of the evidence introduced in the lower court was such that it could be considered under section 580b and section 580d. The issue as to the applicability of section 580d was raised in the court below prior to the court's decision. Since no new evidence was tendered plaintiff was not prejudiced when the court was asked to evaluate the evidence in the light of section 580d. Accordingly, since the issue was raised below and the substantial facts are not in dispute, the question is one of law and this court may properly consider whether the present action was barred by the provisions of section 580d.[4] (See *Hodge* v. *Hodge, supra,* 257 Cal.App.2d 31, 38.)

---

[4]Were this question not one of law it would be necessary to remand the case with directions that defendant's amendment to conform to proof be granted and for findings of fact upon the issues tendered by the amended answer since the practical effect of the trial court's ruling under these circumstances would have been to put defendant out of court with respect to the only real controversy in the case.

Adverting to the question whether the trial court erred in finding that the third note was not intended by the parties to be secured by the first deed of trust, it is significant to note that no extrinsic evidence was offered on this issue. No witness testified concerning the intent of the parties; the only evidence upon this issue consisted of the instruments offered in evidence, i.e., the first note, the third note, the first deed of trust and the second deed of trust. Union Bank argues that the parties who signed the first deed of trust were not obligees under the third note and that the first and third loans were made for different purposes and that from these facts the trial court could properly infer and find that the parties did not intend the third note to be secured by the first deed of trust.

The statement that the persons who signed the first deed of trust were not obligees under the third note is not accurate. Defendant is an obligee under both the first and third notes, and a party to both deeds of trust. His wife, although not a party to the third note, is a party to the first note and to both deeds of trust. It should be observed here that under the terms of the first deed of trust both defendant and his wife agreed that the property granted, transferred and assigned to the trustee thereunder was security not only for the payment of the first note but for "the payment of additional sums and interest thereon now or *hereafter due or owing from Trustor (or any of them)* to Beneficiary, . . ."[5] (Italics added.)

The question whether a second obligation is a future advance under a prior deed of trust containing a dragnet clause where the security for both obligations is the same property is one of first impression in this state. The California courts have been called upon to make a determination as to whether the second obligation was a future advance where the security for the first obligation was different from that securing the second obligation. Thus in *Moran* v. *Gardemeyer,* 82 Cal. 96 [23 P. 6], the debtor obtained a loan from the creditor which was secured by a mortgage on real estate. The debtor then obtained a second loan from the creditor. As security for this loan the debtor endorsed over to the creditor a note the debtor was holding from a third party. The second loan was held not to be a future advance under the mortgage. (At p. 101.) In a companion case, *Moran* v. *Gardemeyer,* 82 Cal. 102 [23 P. 8], the second note recited that it was secured by a crop mortgage. It did not refer to the real estate mortgage under which the creditor desired to secure the second note under a dragnet clause. The Supreme Court held

---

[5]Defendant and his wife are specifically designated as the "Trustor" in the first deed of trust.

that if the second note had said nothing about security it could have been secured by the real estate mortgage, but since it referred to other security, it was not secured by the real estate mortgage. (At pp. 103-104.)

Similarly, in *Provident etc. Assn.* v. *Shaffer,* 2 Cal.App. 216 [83 P. 274], an indebtedness was secured by a mortgage on real property. The secured creditor later advanced $300 above the original loan to pay a materialman for goods supplied to benefit the real property secured by the mortgage. It was held that the $300 was not secured by the mortgage. (At p. 218.)

In *Freedland* v. *Greco,* 45 Cal.2d 462 [289 P.2d 463], the borrower gave the creditor two notes each for $7,000. These represented a single obligation in the sum of $7,000. One note was secured by a deed of trust on realty and the other by a chattel mortgage on equipment. The creditor foreclosed on the deed of trust under a power of sale and credited the sum of $740.35 realized on the sale to the trust deed note. The creditor then brought an action to foreclose the chattel mortgage and for a deficiency judgment. The sum of $440.50 was realized on the sale of the equipment and a deficiency judgment was rendered for $6,671.96 (plus $360 attorney's fees). The reviewing court held that the creditor was entitled to foreclose the chattel mortgage but had no right to a deficiency judgment. (At p. 466.) The court stated: "It is unreasonable to say that the Legislature intended that section 580d could be circumvented by such a manifestly evasive device. In such a situation the legislative intent must have been that the two notes are, in legal contemplation and under section 580d, one, secured by a trust deed." (At p. 467.) The court observed that by giving two notes for the same debt the debtor was, in legal effect, waiving the protection of section 580d, and that such a waiver amounted to a waiver in advance which was contrary to the public policy behind the antideficiency statutes. (At pp. 467-468.)

The case of *Brown* v. *Jensen,* 41 Cal.2d 193 [259 P.2d 425], is somewhat factually similar to the instant case except that two notes were executed for the same obligation and were executed at the same time. The borrower, as part of the purchase price for real property, executed a note for $11,300 in favor of a savings and loan association, secured by a first deed of trust on the property; and at the same time, and also as a part of the purchase price, a second note was executed by the borrower in favor of the savings and loan association, secured by a second deed of trust on the property. The property was foreclosed under the first deed of trust pursuant to which the security became valueless because it had become

exhausted by the sale under the first deed of trust. An action for a deficiency judgment was thereafter brought on the second note. The court held that since both trust deeds were purchase money trust deeds no action could be brought on the second note because any recovery thereon would be a deficiency judgment prohibited by section 580b. (At pp. 195-198.)

Adverting to a case of another jurisdiction, i.e., *Second Nat. Bank of Warren* v. *Boyle,* 155 Ohio St. 482 [44 Ohio Op. 440, 99 N.E.2d 474], cognizance is taken of the rationale that a dragnet clause constitutes a continuing offer by the borrower to secure future loans under the security. (At p. 486.) Accordingly, it was there held that in order to determine whether the lender accepts the offer when a second loan is made, his intent must be ascertained, and there can be no such intent when he takes different security instead. (At pp. 487-489.)

Professor Bernhardt observes that the "California courts have rather consistently tended to prefer a construction that is more faithful to the parties' actual expectations than to the literal wording of the [dragnet] clause." (Cont. Ed. Bar, *supra,* § 4.22, p. 157.) Accordingly, he points out that in the absence of an expressed intention of the parties, two tests have been evolved by which the intention of the parties is to be ascertained, i.e., the "relationship of loans" test, and the "reliance on the security" test. (Cont. Ed. Bar, *supra,* §§ 4.23 and 4.24, pp. 157-160.)

The "relationship of the loans" test is concerned with the relationship of the two loans to each other in ascertaining the intent of the parties. If there is little or no connection between the loans or the loans are so different in nature an inference can be drawn that the parties did not intend the second loan to fall under the security of the first loan. (Cont. Ed. Bar, *supra,* § 4.23, p. 158; see *Moran* v. *Gardemeyer, supra,* 82 Cal. 96.) Bernhardt observes that "If the first loan is made to enable the borrower to erect improvements on his real estate and the purpose of the second loan is only to finance more improvements on the real estate, it is not hard to tie the two loans together under one deed of trust." (Cont. Ed. Bar, *supra.*)

Under the "reliance on the security" test the inquiry is whether the second loan was made in reliance on the original security. Accordingly, when a different security is taken for the second loan an intent cannot be inferred that parties relied on the security for the first loan. The rationale here involved is that the dragnet clause in the first security instrument

constitutes a continuing offer by the borrower to secure further loans under the security of the first security instrument and that when the lender accepts a different security he does not accept the offer. (Cont. Ed. Bar, *supra,* § 4.24, pp. 159-160; see *Moran* v. *Gardemeyer, supra,* 82 Cal. 96; *Second Nat. Bank of Warren* v. *Boyle, supra,* 155 Ohio St. 482 [44 Ohio Op. 440, 99 N.E.2d 474].)

■ I conclude, therefore, that under either of these tests the trial court was required to find that the parties intended that the third loan was protected by the original real estate security and that the inference drawn by the court that the third note was not intended by the parties to be secured by the first deed of trust is wholly irreconcilable with the evidence. (See *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists,* 227 Cal.App.2d 675, 696-697 [39 Cal.Rptr. 64]; *Larson* v. *Solbakken,* 221 Cal.App.2d 410, 416 [34 Cal.Rptr. 450].) The $10,975.40 borrowed on the third note was used to pay off the $6,000 (the second note) borrowed for the purpose of remodeling the residence and the balance was applied to payments due under the terms of the first note. There was clearly a relationship between the loans, and, significantly, it is inescapable that the parties intended the same real estate security to be the security for the original note and the note in question. I perceive that absent the execution of the second deed of trust the third note would have been included within the real estate security of the first deed of trust because of the relationship of the loan. The execution of the second deed of trust was superfluous.

There can be no question that The Stanford Bank relied on the real estate security in making the third loan. This is not a situation where a different security was taken. The same real estate was the security for both the third note and the first note. Accordingly, defendant's continuing offer in the dragnet clause of the first deed of trust to secure further loans under the real estate security therein conveyed was accepted by The Stanford Bank when it specifically agreed to take the same security under the second deed of trust. In sum, The Stanford Bank unequivocally relied on defendant's residence as security for the third note. Having relied on the same security provided for in the first deed of trust there was no need or necessity for the execution of a second deed of trust.

■ I am persuaded that under the circumstances of this case the second deed of trust merged into the first deed of trust. The estates in the two deeds of trust united in one and the same person, i.e., The Stanford Bank, since the bank had a commensurate and coextensive interest in

each with no intervening interest in another. (*Estate of Washburn,* 11 Cal.App. 735, 746 [106 P. 415].) A "merger" occurs when a greater estate and a lesser coincide in the same person in one and the same right without any intermediate estate. (*Linforth* v. *Montgomery,* 195 Cal. 49, 56 [231 P. 735]; *Shaffer* v. *McCloskey,* 101 Cal. 576, 580 [36 P. 196]; *Wilson* v. *Kipp,* 94 Cal.App.2d 426, 429 [210 P.2d 908]; *Shaw* v. *McCardle,* 92 Cal.App.2d 616, 618 [207 P.2d 645].) Here the second deed of trust was the lesser estate. It was annihilated or merged in the greater estate, i.e., the first deed of trust, without any intermediate estate intervening. The question is one of intent, actual or presumed, of the person in whom the interests are united. (*Linforth* v. *Montgomery, supra; Shaffer* v. *McCloskey, supra.*) As already indicated, the inference required as a matter of law is that The Stanford Bank intended a merger of the two instruments. To permit Union Bank to avoid the effect of section 580d by what amounts to a method of paper shuffling, i.e., the execution of the second deed of trust with the same security on which The Stanford Bank relied as security in making the original loan, is to countenance an evasive device and to permit a circumvention of the antideficiency statutes.[6]

The antideficiency statutes indicate a legislative intent to limit strictly the right to recover deficiency judgments. The cases construing section 580b, dealing with purchase money mortgages and deeds of trust, make it clear that the purpose of that antideficiency statute is to discourage the overvaluing of the security, and that the risk of inadequate security because of overvaluation is placed on the purchase money mortgagee. (See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 42-43; *Bargioni* v. *Hill, supra,* 59 Cal.2d 121, 123; *Prunty* v. *Bank of America,* 37 Cal.App.3d 430, 438-442 [112 Cal.Rptr. 370].) ■ This purpose is, in my opinion, equally within the intendment of section 580d. Accordingly, if property given as security under a deed of trust securing an original obligation is overvalued, or if, as a result of a combination of the original obligation

---

[6]Professor Bernhardt suggests that the use by a bank of two separate notes secured by two separate deeds of trust on the same property, rather than employing a "dragnet clause," may be impermissible under current banking regulations. (Cont. Ed. Bar, *supra,* § 4.18, p. 152.) Note should also be taken of Financial Code section 1235, enacted in 1973, which was not in existence when the instant notes were executed. That statute provides as follows: "A commercial bank holding a first lien on real property may take, or purchase and hold, or loan upon another and immediately junior lien but all such loans shall not exceed in the aggregate 90 percent of the sound market value of the property as determined by proper appraisal. A commercial bank may loan not to exceed the face value of a deed of trust or mortgage which constitutes a first lien upon real property, but in no event shall any such loan exceed 90 percent of the sound market value of the property covered by said mortgage or deed of trust as determined by proper appraisal."

and a future advance it is overvalued, so as to render the security inadequate, the risk should be that of the lender.

Here defendant transferred his residence to the trustee for The Stanford Bank as security for the first note and for future advances. The Stanford Bank knew or should have known the value of the residence it received as security. When it designated the residence as security for the third note it clearly evidenced an intention that the residence was to secure the first as well as the third note. Had its intention been otherwise it would have demanded a different security for the third note.

The judgment is reversed and the court is directed to enter a judgment for the defendant.

**ELKINGTON, J.**—I concur in the opinion of, and the result reached by, Presiding Justice Molinari.

Addressing myself to the dissent of Justice Sims, I am in agreement that, as found by the trial court, "The March 13, 1969, note [described as "the third note" in the principal opinion] was not intended by the parties to be secured by the First Deed of Trust." But I reject the conclusion that this finding mandated the judgment entered by the superior court.

We are, as pointed out in the principal opinion, concerned with the effect of Code of Civil Procedure section 580d. This statute, and its sister sections 580a, 580b and 580c, are an expression of California's "strong" public policy that lenders shall be strictly limited in their right to deficiency judgments after foreclosure of real property security given for their loans.

The genesis of the policy was pointed out by *Hatch* v. *Security-First Nat. Bank,* 19 Cal.2d 254, 259 [120 P.2d 869], as follows: "The evil which led to the enactment of this legislation became pronounced during the recent period of economic depression when creditors were frequently able to bid in the debtor's real property at a nominal figure and also to hold the debtor personally liable for a large proportion of the original debt." In *Brown* v. *Jensen,* 41 Cal.2d 193, 197 [259 P.2d 425], the court said: "These provisions [§§ 580a-580d, inclusive] indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security." (See also *Freedland* v. *Greco,* 45 Cal.2d 462, 467 [289 P.2d 463]; *Valinda Builders, Inc.* v. *Bissner,* 230 Cal.App.2d 106, 112 [40

Cal.Rptr. 735].) The statutes were "adopted to promote the public welfare by shielding the debtor class from oppression." (*California Bank v. Stimson*, 89 Cal.App.2d 552, 554 [201 P.2d 39].) They are to be "liberally construed to effectuate the specific legislative purpose behind [them]. . . . '[T]he courts have exhibited a very hospitable attitude toward the legislative policy underlying the anti-deficiency legislation and have given it a broad and liberal construction that often goes beyond the narrow bounds of the statutory language.' " (*Prunty* v. *Bank of America*, 37 Cal.App.3d 430, 436 [112 Cal.Rptr. 370].) And the "legislative purpose against deficiency judgments may not be subverted." (*Union Bank* v. *Brummell*, 269 Cal.App.2d 836, 838 [75 Cal.Rptr. 234].)

The applicability of the statutes does not depend upon the express or presumptive bad faith or tortious conduct of the lender. "The antideficiency statutes impliedly recognize that there are many elements other than tortious conduct on the part of trustors and mortgagors which will prevent the collection of the debt, particularly of a purchase money security, such as failure of an enterprise through inept management, too high a price paid for the property, adverse economic conditions, and the like." (*Weaver* v. *Bay*, 216 Cal.App.2d 559, 563 [31 Cal.Rptr. 211].)

The provisions of the statutes may not be waived, since they were "enacted for a public reason and as a declaration of public policy" of the state. (*California Bank* v. *Stimson, supra*, 89 Cal.App.2d 552, 554.) "Because of the strong reasons of policy [this rule preventing waiver] should apply to section 580d. The section would have little effect if the prospective creditor could compel the prospective debtor to waive it in advance." (*Freedland* v. *Greco, supra*, 45 Cal.2d 462, 467.) It thus appears that any "intent of the parties" of the case before us, in contravention of section 580d and the public policy on which it is founded, becomes irrelevant to our consideration of the appeal.

The immediate issue, as I see it, is accordingly narrowed to the question whether the transaction, without consideration of "waiver" or "intent," was violative of section 580d.

There is an important distinction to be drawn between section 580b, prohibiting deficiency judgments following *any* foreclosure sale under a "purchase money" real property security instrument, and section 580d. Section 580d bans any deficiency judgment following a *private* (as distinguished from *judicial*) sale "under power of sale contained" in any real property security instrument, "purchase money" or otherwise. But

section 580d permits a deficiency judgment after a *judicial* foreclosure sale; the reason is that the debtor's "right of redemption" following such a sale gives him a protection deemed substantially equivalent to that otherwise afforded by the statute.[1]

In the instant case the foreclosure sale under the "first deed of trust" was nonjudicial and according to the "power of sale" contained therein. Had that deed of trust, and the sale thereunder, concerned the borrower's entire obligation to the plaintiff bank, it appears without question that section 580d would bar any deficiency judgment. But instead there were two obligations (the "first" and "third" notes), secured by two deeds of trust upon the same piece of real property.

The issue may be further condensed to the question whether by making two successive loans *on the security of the same property*, the lender was permitted, by private foreclosure under the "first deed of trust's" power of sale (1) to obtain title to the real property security, and then (2) hold the borrower liable for a deficiency, i.e., the balance due on "the third note," the security for which had been rendered valueless by the lender's own act.

It is opined that such a practice would be contrary to the provisions of section 580d, and to the policy expressed thereby. It would permit the lender to frustrate the statute's public purpose by obtaining the real property security at a private foreclosure sale thus denying the borrower any right of redemption, and also obtaining a judgment for the remaining deficiency. Such a transaction should be construed in such a manner as "to avoid thwarting the purpose of section 580d." (See *Freedland* v. *Greco, supra,* 45 Cal.2d 462, 468.)

---

[1]"The effect of section 580d is to permit deficiency judgments only in those cases in which the creditor, by foreclosing judicially, allows the debtor the opportunity of exercising his right of redemption. Upon judicial foreclosure, the creditor can recover from the debtor whose obligation is secured by the foreclosed mortgage or deed of trust any deficiency remaining after the proceeds of sale are applied to the debt, and the debtor has a statutory right of redemption. No right of redemption exists following a nonjudicial sale of the security. Section 580d makes up, at least in part, for the loss of the debtor's right of redemption by depriving the creditor who elects the nonjudicial foreclosure or sale remedy from obtaining a deficiency judgment against the debtor." (*Union Bank* v. *Gradsky,* 265 Cal.App.2d 40, 43 [71 Cal.Rptr. 64]; and see *Spangler* v. *Memel,* 7 Cal.3d 603, 610-611 [102 Cal.Rptr. 807, 498 P.2d 1055]; *Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97]; *Indusco Management Corp.* v. *Robertson,* 40 Cal.App.3d 456, 460-461 [114 Cal.Rptr. 47]; *Bauman* v. *Castle,* 15 Cal.App.3d 990,993 [93 Cal.Rptr. 565]; *Kass* v. *Weber,* 261 Cal.App.2d 417, 421-422 [67 Cal.Rptr. 876]; *Loretz* v. *Cal-Coast Dev. Corp.,* 249 Cal.App.2d 176, 178 [57 Cal.Rptr. 188]; *Lange* v. *Aver,* 241 Cal.App.2d 793, 796-798 [50 Cal.Rptr. 847].)

It is recognized that the two obligations in question were not created contemporaneously. But the statute's purpose, that if the lender elects upon default of the borrower to hold a private foreclosure sale he must look to his security alone, and not to the borrower, for repayment, seems reasonably applicable regardless of the timing of the successive loans. (See *Freedland* v. *Greco, supra,* 45 Cal.2d 462, 467.)

Nor do I believe that the lender bank, in the context of this case, should be equated with a third party who might make a loan taking as security a second deed of trust on the same real property. It is true that when the security of a second deed of trust is rendered valueless by a prior foreclosure, through no fault or action of the second lender (see *Brown* v. *Jensen, supra,* 41 Cal.2d 193, 195-196), that lender for equitable reasons will ordinarily be permitted an action against the debtor on the second obligation. (See *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43-44.)[2] But such principles are obviously inapplicable in a factual context such as that before us, where the single lender with the choice of a private or judicial foreclosure sale, opts for the private sale. Having elected to proceed by way of a private sale under the "first deed of trust's" power of sale the lender in reason, and equity, was bound by that election. Having taken title to the subject real property in that manner, it was precluded by section 580d from also taking a deficiency judgment.

**SIMS, J.**—I respectfully dissent.

I agree with the conclusion that the record supports the trial court's finding that the first deed of trust, which was given to secure a loan of $28,000 effected September 1, 1967, was not a deed of trust given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of the property. The property had been acquired October 21, 1965, partially with a loan from First Savings and

---

[2]"The purpose of achieving a parity of remedies [see fn. 1, *ante*] would not be served by applying section 580d against a nonselling junior lienor. Even without the section the junior has fewer rights after a senior private sale than after a senior judicial sale. He may redeem from a senior judicial sale (Code Civ. Proc., § 701), or he may obtain a deficiency judgment. (*Savings Bank* v. *Central Market Co.,* 122 Cal. 28 [54 P. 273]; *Giandeini* v. *Ramirez,* 11 Cal.App.2d 469 [54 P.2d 91]; see *Brown* v. *Jensen,* 41 Cal.2d 193, 196 [259 P.2d 425].) After a senior private sale, the junior has no right to redeem. This disparity of rights would be aggravated were he also denied a right to a deficiency judgment by section 580d. There is no purpose in denying the junior his single remedy after a senior private sale while leaving him with two alternative remedies after a senior judicial sale. The junior's right to recover should not be controlled by the whim of the senior, and there is no reason to extend the language of section 580d to reach that result." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 44.)

Loan Association. Although the balance of that loan was paid off with a portion of the 1967 loan, part of the proceeds were used for other purposes. In any event the advance by plaintiff's predecessor in 1967 could in no way contribute to an inflationary purchase in 1965. Section 580b of the Code of Civil Procedure is not applicable to either the obligation secured by the first deed of trust or to the additional $10,973.40 secured by the second deed of trust executed March 13, 1969.

The resolution of this controversy must depend on the propriety of the following finding of the trial court: "7. The March 13, 1969, note was not intended by the parties to be secured by the First Deed of Trust." Defendant's motion to amend his answer to conform to proof to set up the provisions of section 580d of the Code of Civil Procedure was based on the evidence which was adduced at the trial, as distinguished from an earlier motion to vacate the order of submittal to offer newly discovered evidence on the theory that the first deed of trust secured a purchase money loan under section 580b, which motion was denied. Consequently, if the finding of the court was sustained by the evidence, the trial court properly denied the motion to amend the answer.

Professor Bernhardt suggests, "The creditor cannot have it both ways: He cannot decide to claim that the other debt is secured if the security is ample enough to cover both debts or alternatively claim that it is unsecured when the security is inadequate. Whether or not the second debt is secured should depend on the mutual intent of both the creditor and the debtor, properly manifested in the deed of trust, and perhaps also on the creditor's intent, properly manifested in the second note. But that question cannot be made to turn on the creditor's election of remedy, manifested long after the documents are completed." (Cal. Real Estate Secured Transactions (Cont. Ed. Bar 1970) § 4.26, p. 161.)

Turning to the clause involved in the first deed of trust dated September 1, 1967, it provides: "1. That Trustor, for the purpose of securing (a) the payment of Trustor's promissory note of even date herewith in the principal sum of $28,000.00 payable to Beneficiary, or order, and all extensions and renewals thereof, (b) performance of each agreement of Trustor incorporated by reference or herein contained, (c) the payment of all sums of money with interest which may be paid out or advanced by, or may otherwise be due to Trustee or Beneficiary under any provision of this Deed of Trust, and (d) the payment of additional sums and interest thereon now or hereafter due or owing from Trustor (or any of them) to Beneficiary, hereby irrevocably grants, transfers and

assigns to Trustee in trust with power of sale, that certain real property in [describing specific property in the City of Palo Alto]." Subdivision "(d)" is valid, and, as between the parties, carries with it the right of the creditor to make future advances on the security of the property which is the subject of the deed of trust. (See *Tapia* v. *Demartini* (1888) 77 Cal. 383, 386-388 [19 P. 641]; *Lomanto* v. *Bank of America* (1972) 22 Cal.App.3d 663, 668 [99 Cal.Rptr. 442]; *Pike* v. *Tuttle* (1971) 18 Cal.App.3d 746, 751 [96 Cal.Rptr. 403]; *Oaks* v. *Weingartner* (1951) 105 Cal.App.2d 598, 601-602, 642-647 [234 P.2d 194]; *Kesling* v. *Bank of America National Trust & Sav. Ass'n* (9th Cir. 1971) 449 F.2d 770, 771; and *Second Nat. Bank of Warren* v. *Boyle* (1951) 155 Ohio St. 482, 485 [44 Ohio Op. 440, 99 N.E.2d 474, 476]; and Cal. Real Estate Secured Transactions, *supra,* §§ 4.18-4.19, pp. 152-154. Cf. *Gates* v. *Crocker-Anglo Nat. Bk.* (1968) 257 Cal.App.2d 857, 859-861 [65 Cal.Rptr. 536] [preexisting unsecured obligation of one of two co-tenants in common]; *Lomanto* v. *Bank of America, supra,* 22 Cal.App.3d 663, 670 [subsequent obligation of one of two co-tenants]; and *Provident etc. Assn.* v. *Shaffer* (1905) 2 Cal.App. 216, 217-218 [83 P. 274] [payment to materialman on unauthorized signature of one of two mortgagors].)

In *Second Nat. Bank of Warren* v. *Boyle, supra,* the situation following the creation of the original security was analyzed as follows: "Obviously, where there. is no· obligation to make future advances, a mortgage, purporting·to secure such future advances, cannot secure such advances until the advances have been made. Until then, so far as such advances are concerned, there is nothing for the mortgage to secure; and the provisions of such a mortgage merely represent an expression of the intention of the mortgagor and mortgagee that the mortgage shall operate as a security for the obligations of the mortgagor with respect to such advances, if and when such obligations arise. At most, those provisions represent an offer by the mortgagor to provide the security of the mortgage for such advances if and when they are made. [Citation.] If such offer is accepted by the mortgagee in making a subsequent advance, then the necessity of executing and recording a new mortgage to secure such advance may be avoided. [Citation.] The making of a loan to the mortgagor, *in reliance upon that offer,* may, in and of itself, indicate an acceptance of that offer. [Citations.]" (155 Ohio St. at p. 486 [99 N.E.2d at p. 476].) So in *Moran* v. *Gardemeyer* (1889) 82 Cal. 102 [23 P. 8], it was recognized, "If the note had been silent on the subject of security, under the well-established rule in regard to mortgages given to secure future indebtedness, we should have been constrained to hold that it was

secured by the mortgage in suit to the extent of the limitation therein prescribed." (82 Cal. at p. 103.)

The defendant testified that he obtained a loan for $6,000, deposited in his account on that day, which sum was supposed to be enough to finish the home improvements. On April 21, 1969, he drew a check to the bank from that account for $592.21, representing two payments, received April 24, 1969, of $204.66 on the first, paying it up to April 29, 1969, and one payment of $182.89 on the second home improvement loan. About $4,500 or $5,000 was actually used for remodeling.

The record fails to reflect when the original home improvement loan was made, or upon what terms the original $6,000 was advanced to the defendant. It may be assumed in the absence of evidence of a contrary intent, and in line with the rules enunciated above, that the bank could have claimed that the additional advance was secured by the first deed of trust dated September 1, 1967. On March 13, 1969, the status of the balance of that loan, apparently $4,973.40, was particularized. At that time the defendant sought an additional advance of $6,000. The bank demanded and secured a second mortgage. In doing so, it and the borrower each manifested an intent that the second loan which was expressly referred to in the second deed of trust, was not to be considered as a further advance under the first deed of trust. (See *Moran* v. *Gardemeyer, supra,* 82 Cal. 102, 103-104.) The finding of the trial court is sustained on the record.

The defendant had secured a final decree of divorce in January 1969. The bank could not be sure that the dragnet clause would bind any interest the former wife might have in the property without her express consent. (See *Lomanto* v. *Bank of America, supra,* 22 Cal.App.3d 663, 670; and *Provident etc. Assn.* v. *Shaffer, supra,* 2 Cal.App. 216, 217-218.) Moreover, the bank was entitled to memorialize any further advance to avoid conflict with any intervening claim of liens. It was not obligated to make any further advances, and the defendant was free to shop for further funds and give a second mortgage to any lender he desired, with a resulting liability for any deficiency that might result if future foreclosure of the first deed of trust failed to leave any surplus. Under these conditions there was nothing unconscionable in the bank's seeking further assurance by way of a second mortgage. Under the rule promulgated by the majority opinion the creditor would be at a disadvantage in dealing with his own financial institution because it could only lend on terms which are more unfavorable to it, than would

be terms that would automatically enure to a new lender on the security of a second mortgage. The bank was not called upon to appraise and oversee the improvements, and in so doing prevent inflationary or improper construction. (Cf. *Prunty* v. *Bank of America* (1974) 37 Cal.App.3d 430, 441 [112 Cal.Rptr. 370].) There is nothing in the record to show that the defendant was ever obligated to put the proceeds into improvement of the residence which served as security for the two deeds of trust. In fact it is doubtful that even half of the $12,000 advanced ever was used for such purposes.

In *Pike* v. *Tuttle, supra,* where there was an intervening lien, the creditor was allowed to recover the balance due under a future advance which was in fact made on the security provided by a "dragnet clause," because the property had been foreclosed by the intervening lienholder. The court said, "To relieve Tuttle of the burden of payment of a just debt by presuming that as to him the payments were applied to discharge that debt, when he gave Pike no such direction and when it would have been impossible for Pike himself to do so, would be patently inconsistent and would lend our approval to the perpetration of an injustice." (18 Cal.App.3d at p. 753.) Here the security was exhausted by the sale under the first deed of trust at a loss to the creditor. There was no attempt to minimize the amount bid below what the evidence showed was the fair market value. As between the borrower and the lender, the loss should fall on the borrower. He should not receive a windfall because he secured new funds from one who was also the holder of the first deed of trust.

*Freedland* v. *Greco* (1955) 45 Cal.2d 462 [289 P.2d 463], is not applicable to the situation here. There the creditor held two separate notes for what was but a single obligation. The court properly held that after selling the real property, the creditor could not recover a deficiency by suit in the second note. It stated, ". . . in order to avoid thwarting the purpose of section 580d by a subterfuge, we must construe that section as embracing a situation such as we have here. If we do not so construe the section the debtor would, in legal effect, waive in advance the protection afforded by being required to give *two notes for the same debt,* even though the instruments contained no such waiver." (45 Cal.2d at p. 468, italics added. See also Union Bank v. Brummell (1969) 269 Cal.App.2d 836, 838.) Here the lender made separate advances to the borrower. The lender did not lump them all under the "dragnet clause" of the first deed

of trust. As could any other financial institution[1] it demanded and received additional security for the further advances. When that security was rendered valueless it, as any other second encumbrancer, should be entitled to recover what it advanced. (See *Bargioni* v. *Hill* (1963) 59 Cal.2d 121, 122 [28 Cal.Rptr. 321, 378 P.2d 593]; and *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 43-44 [27 Cal.Rptr. 873, 378 P.2d 97].)

I would affirm the judgment.

A petition for a rehearing was denied February 10, 1976. Sims, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied March 10, 1976.

---

[1]The provisions of section 1235 of the Financial Code, as added by Statutes 1973, chapter 963, section 43, page 1817, were not in effect at the time of this transaction. Since the matter was not raised below, I express no opinion as to whether the transaction violated the provisions of section 1227 of the Financial Code as they read March 13, 1969, or, if so, what effect such violation would have on the obligation of the borrower.