Filed 12/21/20  Sartiaguda v. Ivy Bridge Group etc. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHRISTINE SARTIAGUDA, | B294402 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC631423) |
| v. | |
| IVY BRIDGE GROUP (WEST COAST), INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles.  Gregory W. Alarcon, Judge.  Affirmed.

The Cullen Law Group, Paul T. Cullen, for Plaintiff and Appellant.

Law Offices of Roger C. Hsu, Roger C. Hsu and Joseph M. Liu, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff Christine Sartiaguda contracted with defendant Ivy Bridge Group (West Coast), Inc. to host in her home a 14-year old student from China. During her stay, the student caused significant damage to plaintiff's hardwood floors. Plaintiff sued defendant alleging it was responsible for the damage, but the trial court entered judgment in defendant's favor.

On appeal, plaintiff challenges the trial court's ruling on her implied covenant of good faith and fair dealing claim, contending that the court misapplied the law and failed to make required findings. She also contends that the court made an error of law when it denied her motion for new trial and abused its discretion when it denied her request for leave to amend her complaint to add a claim under the Labor Code. We affirm.

# II. FACTUAL BACKGROUND[1]

In August 2014, plaintiff entered into a "Homestay Service Agreement" (Homestay Agreement) with defendant, pursuant to which she agreed to provide housing for and supervision of a 14-year-old student from China[2] (the student). In addition to

---

[1] With the exception of her challenge to the trial court's finding that the student's conduct was intentional, plaintiff does not challenge the sufficiency of the evidence in support of the court's other factual findings. This section is therefore based primarily on those findings as stated in the court's amended statement of decision.

[2] The amended statement of decision states that the student was 15, but plaintiff asserts that she was 14.

specifying plaintiff's obligations concerning the student's housing, meals, transportation, activities, and supervision,[3] the Homestay Agreement contained a provision dealing with damage to plaintiff's home that read: "[Plaintiff] will notify [defendant] immediately of any damage to . . . [her] home. *Students carry third-party liability insurance and will be responsible for any damage.* Proof by photos of damage and estimates will need to be provided to [defendant] and approved. In the event that the student moves from [plaintiff's] home, damage should be shown during the check-out inspection along with photos and written estimates provided within 48 hours." (Italics added.)

In June 2014, the student moved into plaintiff's three-level home which had hardwood flooring throughout. In late January or early February 2015, plaintiff discovered damage to her hardwood floors caused by the student's high heeled shoes. Accordingly, on or about February 1, plaintiff notified defendant's representative by phone and text that the student was wearing high heeled shoes and causing damage to her floors. But, by February 21, "things were getting worse. And no one [from defendant] was responding to [plaintiff]." She therefore e-mailed defendant's representative that day and again on February 24 and 28. On February 28, plaintiff spoke by phone with the representative explaining that the damage to her floors was getting worse and requesting that the student be removed from her home.

On March 4, 2015, another representative came to plaintiff's home, inspected the damaged floors, and witnessed the student write and sign a statement accepting responsibility for

---

[3]     In return for the services required by the agreement, defendant agreed to pay plaintiff $1,400 per month.

3

the damage.  At plaintiff's request, the representative took possession of the student's high heeled shoes.

According to plaintiff, on March 17, 2015, she called the police because the student "burst into [her] home, . . . threatened [her] life and the [lives] of [her] children . . . ."  The police responded and removed the student and her belongings from plaintiff's home.

Following the student's removal, her mother initially offered to pay $2,000 for the damage to plaintiff's floors.  After further negotiations, the mother increased her offer to $8,000, but plaintiff refused to accept it.[4]  Plaintiff claimed that, despite her repeated demands, defendant and its attorney refused to provide her with any information concerning the student's third-party liability insurance.

## III.   PROCEDURAL BACKGROUND

In August 2016, plaintiff filed this action against defendant.  In the operative first amended complaint, she alleged four causes of action for:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing (implied covenant); (3) negligence; and (4) fraudulent inducement and

---

[4]     At the time of the negotiations, plaintiff had obtained two estimates of approximately $47,000 and $50,000 for the damage to her floors.  Her expert opined at trial that the floors likely could not be refinished and that the replacement cost would be $60,000, plus other incidental expenses.  Defendant's expert countered that the floors could be refinished for approximately $14,000 and replaced for $33,000.

4

intentional misrepresentation.[5]  Plaintiff attached to her complaint and incorporated by reference a copy of the Homestay Agreement between herself and defendant.[6]

A bench trial commenced on January 18, 2018.  On March 5, 2018, the court heard the parties' oral arguments and took the matter under submission.

On March 27, 2018, the trial court issued its proposed statement of decision ruling in defendant's favor on each of plaintiff's five causes of action.  On April 17, 2018, plaintiff filed her objections to the proposed decision supported by the declaration of her attorney and certain attachments, including a proposed revised statement of decision.

On August 2, 2018, the trial court issued its amended statement of decision which again ruled in favor of defendant on each of plaintiff's five causes of action.

On September 5, 2018, the trial court entered a judgment in favor of defendant on all five causes of action and found that defendant was entitled to recover attorney fees and costs from plaintiff.

---

[5]     As explained below, the trial court's amended statement of decision included a determination on a fifth cause of action for vicarious liability under Civil Code section 1714.1, which claim is not the subject of this appeal.

[6]     The Homestay Agreement was among the exhibits introduced at trial.  Although plaintiff requested that the trial exhibits be transmitted as part of the record on appeal, the trial court advised that it did not retain custody of them.  For purposes of this appeal, we assume the copy of the Homestay Agreement attached to the first amended complaint is identical to the copy introduced as an exhibit at trial.

## IV. DISCUSSION

### A. *Implied Covenant Claim*

Plaintiff challenges the trial court's ruling against her on her implied covenant claim, contending that: (1) the court "[m]isapplied the [t]est for [i]nsurability [u]nder Insurance Code [section] 533" by finding that the student's conduct was "'largely intentional'"[7]; (2) failed to make a finding as to one of plaintiff's theories; and (3) "[i]mproperly [i]mposed an [o]bligation on [p]laintiff to [q]uantify the [p]ortion of [d]amages [a]ttributable to [n]egligence [v]ersus [i]ntent." We conclude there was no reversible error on the implied covenant claim.

#### 1. Background

On plaintiff's first cause of action for breach of contract, the trial court concluded that defendant did not breach the Homestay Agreement because it obtained liability insurance for the student and was not responsible for paying for property damaged by the student. Plaintiff does not challenge this ruling on appeal. Instead, she challenges the court's ruling against her on her second cause of action for breach of the implied covenant. On

---

[7] "[B]y statute, and as a matter of public policy, the insurer may not provide coverage for willful injuries by the insured against a third party. (Ins. Code, § 533.)" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18.) Section 533 "codifies the general rule that an insurance policy indemnifying the insured against liability due to his own willful wrong is void as against public policy." (*Arenson v. National Automobile & Casualty Ins. Co.* (1955) 45 Cal.2d 81, 84.)

6

that claim, plaintiff alleged that defendant breached the implied covenant by falsely representing in the Homestay Agreement that the student would have insurance to cover damages to plaintiff's property; plaintiff suffered a loss which would have been covered by the student's policy; she timely notified defendant of that loss; and defendant "unreasonably failed to tender the insurance policy and/or failed to pay policy benefits," which failures caused her damage.

The trial court ruled in favor of defendant on the second cause of action, finding that plaintiff failed to meet her burden for two separate reasons. First, the court concluded that defendant did not breach the implied covenant because the amount of the student's liability policy was sufficient under the circumstances of this case. Second, the court concluded that "[d]efendant did nothing to prevent [p]laintiff from receiving the benefits of the Homestay Agreement, namely, from obtaining 500 [e]uros in property damage coverage, which, as stated above, was sufficient."[8]

In the alternative, the trial court concluded that there were no damages, reasoning that, "[e]ven if [d]efendant did obtain additional coverage, there would still be no difference in the outcome because the damage caused by [the student] to the wood floors was largely intentional. [Fn. omitted.] 'An insurer is not liable for a loss caused by the willful act of the insured . . . . [(Ins. Code § 533.)]'" The court added: "Moreover, [p]laintiff never quantified which part of the damage to the floors was intentional versus negligent."

---

[8]    Both parties seem to acknowledge that the insurance policy covered damages up to 500,000—not 500—euros.

2.    Legal Principles[9]

"'The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.' (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 . . . .) 'In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract.' (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 . . . .) [¶] . . . [¶]

"The implied covenant of good faith and fair dealing does not impose substantive terms and conditions beyond those to which the parties actually agreed. (*Guz v. Bechtel National, Inc.* [(2000)] 24 Cal.4th [317,] 349.) 'The covenant of good faith and

---

[9]    As stated in CACI No. 325, the elements of a cause of action for breach of the implied covenant are:
"1.    The plaintiff and the defendant entered into a contract;
"2.    The plaintiff did all, or substantially all of the significant things that the contract required her to do or was excused from having to do;
"3.    All conditions required for the defendant's performance had occurred or were excused;
"4.    The defendant engaged in specific conduct that *prevented the plaintiff from receiving certain benefits under the contract*;
"5.    By doing so, the defendant did not act fairly and in good faith; and
"6.    The plaintiff was harmed by the defendant's conduct." (Emphasis added.)

8

fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. [Citation.] The covenant thus cannot "'be endowed with an existence independent of its contractual underpinnings.'" [Citation.] It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.' (*Id*. at pp. 349–350.)" (*Avidity Partners, LLC v. State of California* (2013) 221 Cal.App.4th 1180, 1204.)

### 3. Analysis

We first consider plaintiff's assertion that the trial court "simply made no finding as to whether [p]laintiff requested that [d]efendant turn over to her information regarding the insurance it had ostensibly obtained for [the student]." Plaintiff suggests that the judgment must be reversed because the court's decision omitted specific "findings of fact" and "conclusions of law" with respect to a theory of liability in support of her implied covenant claim. We disagree.

"[U]pon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required." (Code Civ. Proc., § 632.) Instead, even if the objecting party follows proper procedure for such statements under Code of Civil Procedure sections 632 and 634,[10] "'[t]he trial court is not

---

[10] Defendant contends that plaintiff failed to comply with the requirements of Code of Civil Procedure section 632 because she did not file a request for decision specifying controverted issues *after* the trial court announced its decision. We will assume

required to respond point by point to the issues posed in a request for [a] statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.] 'When this rule is applied, the term "ultimate fact" generally refers to a core fact, such as an essential element of a claim.' [Citation.] 'Ultimate facts are distinguished from evidentiary facts and from legal conclusions.' [Citation.] Thus, a court is not expected to make findings with regard to 'detailed evidentiary facts or to make minute findings as to individual items of evidence.' [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983.)

In issuing its ruling on the second cause of action, the trial court listed the elements necessary to establish a breach of the implied covenant, including that the "[d]efendant must have unfairly prevented [the] plaintiff from receiving the benefits [the] plaintiff was entitled to receive under the contract. . . ." The court then found, among other things, that "[d]efendant [was] not liable [for breach of the implied covenant] because [it] did nothing to prevent [p]laintiff from receiving the benefits of the Homestay Agreement, namely from obtaining 500 [e]uros in property damage coverage . . . ." That finding constituted a determination of an ultimate or core fact, i.e., an essential element of plaintiff's implied covenant claim. (*Thompson v. Asimos, supra*, 6

without deciding that plaintiff's proposed statement of decision, filed at the court's request *before* it announced its decision, satisfied the requirements of section 632 regarding the timing and content of a request under that section. Plaintiff's proposed decision included a finding on whether defendant's failure to provide insurance information or tender plaintiff's damage claim to the insurance company breached the implied covenant.

Cal.App.5th at p. 983.) The court therefore did not omit a necessary finding on the second liability theory.[11] (*St. Julian v. Financial Indemnity Co.* (1969) 273 Cal.App.2d 185, 194 ["'[A] specific finding is not required on an issue where it follows by necessary implication from a general finding [citations]. . . . [A] finding on a particular issue is an implied negation of all contradictory positions [citations]'"].)

Given the trial court's finding that defendant did not prevent plaintiff from receiving the benefits under the contract, which was sufficient by itself to dispose of the implied covenant claim in favor of defendant, we do not need to consider plaintiff's contention based on the court's alternative ruling under Insurance Code section 533.[12] Plaintiff was not prejudiced by

---

[11] Plaintiff does not challenge—nor could she—the sufficiency of the evidence in support of the trial court's finding that defendant did nothing to prevent plaintiff from receiving the benefits of the student's liability coverage. Although plaintiff testified that she repeatedly requested information about insurance, defendant's CEO and its representative assigned to the Homestay Agreement both testified that plaintiff never requested insurance information.

[12] Ordinarily, we review the correctness of the trial court's ruling, not the reasons for it. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 ["'The fact that the action of the court may have been based upon an erroneous theory of the case, or upon an improper or unsound course of reasoning, cannot determine the question of its propriety. No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any

11

any claimed error regarding that ruling in light of the court's other findings on the implied covenant claim. (See, e.g. *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1114 ["'[i]f the findings which are made are of such a character as to dispose of issues which are sufficient to uphold the judgment, it is not a mistrial or against law to fail or omit to make findings upon other issues which, if made, would not invalidate the judgment'"].)

Finally, we reject plaintiff's contention that the trial court improperly imposed on her an obligation to quantify the portion of damages attributable to negligence versus intentional conduct. As plaintiff concedes, the court did not "directly" impose any such obligation. To the contrary, in its statement of decision, the court correctly recited the elements of a breach of the implied covenant claim. In finding that plaintiff failed to prove damages, the court also observed that "[p]laintiff never quantified which part of the damage to the floors was intentional versus negligent." That statement, by itself, does not demonstrate that the court added an element to plaintiff's claim.

B.    *Motion for New Trial*

   1.    Background

On October 9, 2018, plaintiff moved for a new trial, arguing, among other things, that the trial court's ruling that the student's conduct was "largely intentional" and therefore uninsurable under Insurance Code section 533 was an error in

---

theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion'"].)

law to which plaintiff took exception at trial. Defendant opposed the motion.

Following extensive argument at the November 8, 2018, hearing on the new trial motion, the trial court took the matter under submission. Because the court did not issue a ruling on the motion within the time permitted by law, the motion was deemed denied by operation of law. (Code Civ. Proc., § 660.)

2.    Analysis

Plaintiff concedes that her challenge to the trial court's denial of her motion for new trial is dependent upon her prevailing on her argument that the court misapplied Insurance Code section 533. As we discuss above, plaintiff cannot demonstrate that she was prejudiced by any assumed error in the court's application of section 533. We therefore reject her challenge to the court's ruling on the new trial motion.

C.    *Leave to Amend*

1.    Background

At the close of testimony on January 23, 2018, plaintiff orally requested leave to amend her complaint to add a claim under Labor Code section 2802.[13] The trial court instructed plaintiff to make the motion in writing.

---

[13]    Labor Code section 2802, subdivision (a) provides: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her

On January 31, 2018, plaintiff filed her motion for leave to amend arguing, among other things, that she was simply asserting "a different legal theory based upon and supported by the same operative facts that [were] already in evidence." Defendant opposed the motion, arguing that it had not had the opportunity to conduct discovery on the existence of an employment relationship or the issue of whether the damage to plaintiff's floors constituted "necessary expenditures or losses" incurred by an employee under Labor Code section 2802. In her reply, plaintiff reiterated that the Homestay Agreement and the testimony that had already been presented at trial about that agreement established her employment status and entitlement to the same damages she had already proven.

On March 5, 2018, following argument on the motion, the trial court denied it.

### 2. Legal Principles

Leave to amend a complaint is within the sound discretion of the trial court and ""'[t]he exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse.'"" (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.) Code of Civil Procedure section 473 allows a party to amend his or her pleadings in the furtherance of justice and section 576 allows a trial court to grant leave to amend even after the commencement of trial. Section 469, which governs motions for leave to amend to conform to proof at trial, provides in pertinent

---

obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

part: "Variance between the allegation in a pleading and the proof shall not be deemed material, unless it has actually misled the adverse party to his or her prejudice in maintaining his or her action or defense upon the merits." Amendments to conform to proof at trial, "if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation." (*Union Bank v. Wendland* (1976) 54 Cal.App.3d 393, 400.)

"Such amendments have been allowed with great liberality 'and no abuse of discretion is shown *unless by permitting the amendment new and substantially different issues are introduced in the case or the right of the adverse party prejudiced* [citation].' . . . [Citations.]" (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 31.) Leave to amend should be denied only "when [the proposed amendments] raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend. [Citations.]' [Citations.]" (*Ibid.*) "The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded." (*Union Bank v. Wendland, supra,* 54 Cal.App.3d at pp. 400–401.)

3. Analysis

Plaintiff maintains that the trial court abused its discretion by denying her motion during trial to amend her complaint to conform to proof. According to plaintiff, defendant's questioning of its CEO "opened up" the issue of whether the Homestay Agreement created an employment relationship between plaintiff and defendant. As plaintiff views the trial evidence, it was

15

sufficient—without more—to establish an employer-employee relationship and damages under Labor Code section 2802. Plaintiff therefore concludes that defendant would not have suffered any prejudice if the court had allowed the amendment at the end of trial.

The Labor Code claim that plaintiff sought to add late in the trial would have required defendant to defend against that assertion by showing that plaintiff was an independent contractor, as opposed to an employee. "Under California law, an individual who provides services for another is presumed to be an employee. ([Labor Code] § 3357 ['Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee']; see *Robinson v. George* (1940) 16 Cal.2d 238, 243 . . . .) From this threshold, the burden is on an employer to 'prove, if it can, that the presumed employee was an independent contractor.' (*Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895, 900.)" (*Gonzales v. San Gabriel Transit, Inc.* (2019) 40 Cal.App.5th 1131, 1151, review granted Jan. 15, 2020, S259027 (*Gonzales*).)

There are two potential tests that could have been applied to determine whether plaintiff was an independent contractor, as opposed to defendant's employee.[14] We conclude, however, that

---

[14] As the court in *Gonzales, supra*, 40 Cal.App.5th at page 1151 explained, "[f]or decades, California courts have applied the test articulated in [*S.G.*] *Borello* [*& Sons, Inc. v. Department of Industrial Relations* (1989)] 48 Cal.3d 341 [(*Borello*)], to determine whether a worker is an employee or an independent contractor. [Citations.] [¶] Under *Borello*, ""[t]he principal test of an employment relationship [was] whether the person to whom service is rendered ha[d] the *right to control the manner and means of accomplishing the result* desired.""" (*Ibid.*) Specifically,

16

under either test, the required showing would have presented contested issues of fact. (See *Ali v. L.A. Focus Publication* (2003) 112 Cal.App.4th 1477, 1485 ["Generally, whether a plaintiff was an employee or independent contractor is a question of fact"].) And these employment-related issues were not subject to discovery prior to trial. Thus, if leave to amend had been granted, defendant would have been required to examine witnesses at trial on these issues without the benefit of first deposing them. Moreover, defendant would have been unable to call additional witnesses and to introduce additional documents that may have come to light during pretrial discovery specifically tailored to employment law issues, such as, for example, the right to control the manner and means of accomplishing the result desired. Under these circumstances, the trial court did not abuse its discretion in denying the belated motion to amend the complaint.

---

*Borello* and its progeny required courts to apply several—eight—secondary indicia to resolve the issue. (*Ibid.*)

But, in *Dynamex Operations W. v. Superior Court* (2018) 4 Cal.5th 903, the court held that, in *wage and hour cases*, the hiring party seeking to show an independent contractor relationship must "establish *each* of the three factors embodied in the ABC test—namely (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." (*Id.* at p. 957.)

17

## V.    DISPOSITION

The judgment is affirmed.  In the interest of justice, no costs are awarded on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:


RUBIN, P. J.


BAKER, J.